FILED

2009 Sep-29  PM 02:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| BARBER AUTO SALES, INC. | ) | |
| Plaintiff, | ) | |
| vs. | ) | CV 06-J-4686-NE |
| UNITED PARCEL SERVICE CO., INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

This case is before the court on plaintiff's motion for class certification.  For the reasons hereinafter set forth, the motion is GRANTED.

## I.  Factual Background

This case alleges a simple breach of contract claim based upon a standard provision in defendant, United Parcel Service Co., Inc.'s ("UPS"), Customer Agreement.[1]

---

[1]The contracts between plaintiff and UPS includes the Carrier Agreement, which expressly incorporates the UPS General Tariff, addenda to the UPS General Tariff, and the UPS Rate and Service Guide.  These documents are collectively referred to as the "UPS Customer Agreement." The contract provision in question is a standard form contract provision.

This Agreement contains a standard clause as follows:

UPS reserves the right to bill for Charges based upon the characteristics of, and services requested from, the packages actually tendered to UPS.  UPS also reserves the right to audit invoices to verify service selection, package and shipment weight, and applicability of any changes, **and to make appropriate adjustments**...

Exh. 1 to plaintiff's submission to motion (emphasis added).

Under the UPS Customer Agreement, the rates that UPS charges for shipping packages are based upon a number of factors including the weight and the size of the package.  With respect to the size of each package, UPS charges based on either the "dimensional weight" or the "actual weight."  The "dimensional weight" reflects the amount of space a package occupies in relation to its "actual weight" and the "dimensional weight" is calculated by multiplying package length by width by height to determine the cubic size.

To determine the "actual weight" the customer is instructed to use any standard scale and round up a fraction of a pound to the next full pound.  To determine the "billable weight" the customer is instructed to compare the package's "actual weight" to the "dimensional weight."  The greater of the two is the "billable weight" and should be used to calculate the rate.

Under the UPS Customer Agreement the customer self-selects and inputs

into the UPS system the level of service and weights and sizes of the packages the

customer ships and by which the customer is charged for UPS service.  The UPS

Customer Agreement gives UPS the right to audit the customer's shipment to

verify the package or shipment's weight or dimensions and to determine if the

customer paid appropriate charges.  If UPS disagrees with the customer's input,

UPS may give the customer a credit, if customer inputs an incorrect charge for the

package which is too high, or UPS may charge the customer a supplemental

shipping charge if UPS determines that the customer's input resulted in an

incorrect charge for the package which is too low.  Each package is given a

tracking number.  The measurements input by the customer as well as the audit

measurements made by UPS and the resulting shipping charge corrections are all

input into UPS' computer system and can be accessed at any time by using the

tracking number of the package.  The customer who is then receiving a bill for

supplemental shipping charges, also known as shipping charge corrections (SCC),

pursuant to UPS' audit has a right to contest the SCC within 180 days of receiving

a contested invoice.  Such claims against UPS are extinguished unless the

customer pleads on the face of the complaint filed against UPS satisfaction and

compliance with these notices and claims periods as a contractual condition

precedent to recovery.

3

The process largely relied upon by UPS to audit the customers' input is one which utilizes DWS machines.[2]  DWS machines resemble the x-ray machines in airports which check baggage.  The DWS machines scan packages with lasers and report the length, width, height, and associated tracking number.  This information is then sent to a server platform where it is processed into complete online summary reports for tracking and controlling DWS effectiveness.  The package characteristics are uploaded to a data base, and a SCC is generated when the dimensions recorded by the DWS machine are greater than those entered by the customer.  DWS machines are also referred to as MDMDs.

Plaintiff filed this class action on behalf of the named plaintiff, Barber Auto Sales, Inc. ("Barber"), and all UPS customers in the United States who purchased shipping services from UPS and who were assessed by UPS "shipping charge corrections" for such services after the customers' packages were shipped.  First amended complaint at ¶ 1.  The central allegation is that UPS is overcharging plaintiff and other customers similarly situated, by erroneously measuring the packages which plaintiff had shipped with UPS in subsequent audits.

Plaintiff seeks to have the following class certified:

---

[2]The DWS machines are not all manufactured by the same manufacturer, some are newer than others, but UPS maintains they are all tested, calibrated and working appropriately.

> All contracted UPS customers between May 15, 2006, and the present who shipped packages with UPS from one location in the United States to another location in the United States wherein the shipper entered into the UPS system, including but not limited to the iShip and Worldship systems, the height, length and width of the packages which UPS used to determine the dimensional weight, which UPS audited the packages, and based upon those audits, entered new and larger dimensions from those entered by the customer, resulting in a higher charge to the customer.

Plaintiff's memorandum in support of motion for class certification, at 33.

Plaintiff seeks certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

## II. **Discussion**

An action may be certified as a class action if "1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a). A class action is appropriate under subdivision (b)(3) of Rule 23 when the prerequisites of subdivision (a) are satisfied and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  The plaintiff bears the burden of proof with respect to each component

of Rule 23.  *Busby v. J.R.H.B.W. Realty, Inc.,* 513 F.3d 1314, 1322 (11th Cir.2008);

*Klay v. Humana, Inc.* 382 F.3d, 1241, 1250 (11th Cir. 2004); *Zeidman v. J. Ray*

*McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981).

A.  *Rule 23(a) inquiry*

1.  *Numerosity*

The court is satisfied that the putative class is sufficiently numerous.  Barber

offered evidence showing that UPS has in excess of a million customers.  Barber

also provided evidence that these customers are geographically dispersed

throughout the United States.  Barber presented expert testimony and other

evidence that UPS' customers can be identified using common information and

technology.  UPS' data concerning its customers is contained in three databases.

Using these databases, through various processes, a report can be generated

identifying those UPS customers within the class period who input package

height, length, width, actual weight, dimensional weight, and billable weight who

were subsequently charged additional shipping by UPS as the result of a UPS

audit of the dimensions of the package being shipped.  "A class action is

appropriate in the first instance when it is impracticable to join all class members

as parties in a single action."  *Newberg on Class Actions* 3:3 (3d Ed. 1992).  A

number of facts other than simply the actual or estimated number of purported

class members may be relevant to the "numerosity" question; these include, for example, the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim. *Zeidman*, 651 F.2d at 1038; citing *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980), cert denied.  449 U.S. 1113, 101 S.Ct. 923 (1981); *Kleiner v. First National Bank of Atlanta*, 97 F.R.D. 683 (N.D. Ga. 1983).  *See also* 3 B Moore's Federal Practice § 23.05.

Applying these factors the court finds that plaintiff has presented evidence that the putative class members are dispersed throughout the United States, that they can be readily identified through UPS' computer system using the individual package's tracking number, the nature of the action being a common contract provision applicable to all the putative class members, and evidence that the size of each putative class member's claim for each package is very small, if not *de minimus*.  The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action presenting his or her rights.  *Smilow v. Southwestern Bell Mobile Systems*, 323 F.3d 32, 41 (1st Cir. 2003) citing *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997).

## 2. *Commonality*

Commonality refers to the group characteristics of the class as a whole. *Prado-Steiman exhibit rel. Prado*, 221 F.3d 1266, 1279 (11th Cir.2000).  The commonality requirement of Rule 23(a)(2) "measures the extent to which all members of a putative class have similar claims." *Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir.2004); citing *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir.2001). The commonality analysis is therefore similar to the typicality analysis; however, commonality refers to the group characteristics of the class as a whole while typicality refers to the individual characteristics of the named plaintiff in relation to the class. *Id.* Under the commonality requirement, the class action must involve issues that are susceptible to class-wide proof. *Id*. Moreover, the commonality requirement does not mandate that all putative class members share identical claims, and factual differences among the claims of the putative class members do not defeat certification. *Id.  See also Prado-Steiman exhibit rel. Prado v. Bush,* 221 F.3d 1266, 1279 n.14 (11th Cir.2000) ("these requirements may be satisfied even if some factual differences exist between the claims of the named representatives and the claims of the class at large")(citations omitted); *Jenkins v. Raymark Industries, Inc*.,  782 F.2d 468, 472 (5th Cir.1986) ("the rule requires only that resolution of the common questions affect all or a substantial number of the

class members").

Here, there is no doubt that questions of law and fact are common to the class.  Each potential plaintiff in this action entered a Customer Agreement with UPS containing the standard provision that plaintiff claims was breached by UPS. The plaintiff asserts that the DWS machines were not accurate, resulting in additional charges to plaintiff which were not "appropriate."  As only "appropriate adjustments" can be made to customers' charges, each such adjustment generated by data from an improperly functioning DWS machine was in breach of the relevant contract provision.  Such an inquiry requires this court and/or a jury to make but one factual finding – are the DWS machines accurate – regardless of whether there is one plaintiff or a large class of plaintiffs.  If the machines are not accurate, charge adjustments would not be appropriate. After such a determination, should it be answered in the negative, all that is left is to calculate each potential plaintiff's damages.  Conversely, should the defendant establish that its machines are entirely accurate, then the resultant charges are clearly "appropriate adjustments," and judgment would necessarily be entered in favor of the defendant.  Thus, the plaintiff has established a sufficient nexus between his and the putative class' claims to establish typicality.  *See e.g.,  Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir.1984), cert. denied, 470 U.S.

1004, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985)("A sufficient nexus is established if

the claims or defenses of the class and the class representative arise from the same

event or pattern or practice and are based on the same legal theory. Typicality,

however, does not require identical claims or defenses").

Numerous other courts have found that claims arising from interpretations

of a form contract present the classic case for treatment as a class action.  See e.g.,

*Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248, 1260-61 (11th Cir.2003)

(finding that defendant allegedly cheated all class members in the same way by

secretly implementing a price change); *Smilow v. Southwestern Bell Mobile*

*System*, 323 F.3d 32, 42 (1st Cir.2003)(finding class action appropriate as case

turned on interpretation of form contract executed by all class members and

defendant); *Kleiner v. First Nat. Bank of Atlanta*, 97 F.R.D. 683, 692

(N.D.Ga.1983) ("claims arising from interpretations of a form contract appear to

present the classic case for treatment as a class action, and breach of contract cases

are routinely certified as such").  Thus, the court is convinced that issues of fact

and law common to the class exist and affect all class members.  *See*

Fed.R.Civ.Pro. 23(a)(2).

     3.  *Typicality*

Typicality requires that a class representative "possess the same interest and

suffer the same injury as the class members." *Cooper,* 390 F.3d at 713.  This

requirement of Rule 23(a)(3) measures whether a sufficient nexus exists between

the claim of the named representatives and those of the class at large. *Busby*, 513

F.3d at 1322.  Because this is similar to the commonality requirement, the

commonality and typicality requirements tend to merge.  *See e.g., General*

*Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 157, 102 S.Ct. 2364,

2371 n. 13, 72 L.Ed.2d 740 (1982).  Both requirements are designed to assure that

the claims of the named plaintiff and the class are sufficiently related.  For the

reasons set forth *supra*, the court finds that the typicality requirement for class

certification has been satisfied.

4.  *Adequacy of Representation*

Rule 23(a)(4) requires that "the representative parties ... fairly and

adequately protect the interest of the class."  The adequate representation

requirement involves questions of whether plaintiff's counsel are qualified,

experienced, and generally able to conduct the proposed litigation, and of whether

plaintiff has interests antagonistic to those of the rest of the class.  *Griffin v.*

*Carlin,*  755 F.2d 1516, 1533 (11th Cir.1985); citing *Johnson v. Georgia Highway*

*Express, Inc.*, 417 F.2d 1122, 1125 (5th Cir.1969).  Defendant makes no argument

that plaintiff's attorneys are not qualified, experienced, and generally able to

conduct the proposed litigation.  To date, plaintiff's counsel has demonstrated an

understanding of the issues before the court as well as the competence and ability

to conduct this litigation.  The court finds this requirement is met.

    B.  *Rule 23(b) inquiry*

    Even though the court has determined that this action satisfies all the

requirements of Rule 23(a), the court must make an additional finding that the

action falls within one of the three categories of Rule 23(b),Fed.R.Civ.P.  The

plaintiff asserts this case is appropriate for certification under Rule 23(b)(3).  To

certify a Rule 23(b)(3) class, the plaintiff must demonstrate (1) that questions of

law or fact common to class members predominate over any questions affecting

only individual members ("predominance"); and (2) that a class action is superior

to other available methods for fairly and efficiently adjudicating the controversy

("superiority"). *Babineau v. Federal Exp. Corp*.,  576 F.3d 1183, 1190 (11th

Cir.2009), citing Fed.R.Civ.P. 23(b)(3); *Vega v. T-Mobile U.S.A., Inc*., 564 F.3d

1256, 1265 (11th Cir.2009).

    Rule 23(b)(3) sets forth four specific considerations for the court in making

these findings.  They are (A) the class members' interests in individually

controlling the prosecution or defense of separate actions; (B) the extent and

nature of any litigation concerning the controversy already begun; (C) the

12

desirability or undesirability of concentrating the litigation of the claims in the

particular forum; and (D) the likely difficulties in managing a class action.

### 1. Predominance

Rule 23(a)(2) requires that there be "questions of law or fact common to the

class," while Rule 23(b)(3) adds the requirement that "the questions of law or fact

common to the members of the class predominate over any questions affecting

only individual members..."[3]   Common issues of fact and law predominate if they

have a direct impact on every class member's entitlement to relief.  *See Klay*, 382

F.3d at 1255.  To make this determination, the court must examine the causes of

action asserted in the complaint on behalf of the putative class.  *Rutstien v. Avis*

*Rent-A-Car Systems, Inc.*, 211 F.3d 1228, 1234 (11th Cir.2000).  "Whether an issue

predominates can only be determined after considering what value the resolution

of the class-wide issue will have in each class member's underlying cause of

action. *Id. (*citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct.

---

[3]In *Vega v. T-Mobile USA, Inc*., the Eleventh Circuit clarified the difference between these
two separate requirements, stating that "[e]ven if the court can identify common questions of law
or fact [under Rule 23(a)(2)] ...'[t]he predominance inquiry ... is 'far more demanding' than Rule
23(a)'s commonality requirement.'" *Vega v. T-Mobile USA, Inc*.,  564 F.3d 1256, 1270 (11th
Cir.2009)(quoting *Rutstein v. Avis Rent-A-Car Sys., Inc*., 211 F.3d 1228, 1233 (11th
Cir.2000))(other citations omitted).

2231, 2249 138 L.Ed.2d 689 (1997)).

In defense of its assertion that common issues of fact and law predominate, the plaintiff asserts that

> The central and predominant issue in this case is whether UPS' system of auditing package dimensions in order to assess SCCs is appropriate.  That is a question that UPS's own representative has testified will be answered in the same fashion for each class member.  Mr. Okon admitted that all customers' claims in this regard would be defended the exact same way whether they were brought individually or as a class.  The common and overriding question is whether a system as flawed as UPS's is a breach of contract.

Plaintiff's brief in support of class certification, at 43.  Defendant responds that the plaintiff's claim of meeting the predominance component fails because plaintiff "spends only two paragraphs in its brief discussing it," which is "insufficient under *Vega*..."  Defendant's response, at 26.

In *Vega*, the Eleventh Circuit again held that for a complaint to support class certification, "common questions must predominate such that they 'ha[ve] a direct impact on every class member's effort to establish liability' that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member.  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1270 (11th Cir.2009) (quoting *Klay*, 382 F.3d at 1255).  *See also Rutstein*, 211 F.3d at 1233 (examining whether the issues in a class action are subject to generalized

proof).

The sole remaining cause of action in this case is a claim for breach of

contract.  The common issue here, namely whether the UPS DWS machines used

to make adjustments to the customers' charges are accurate, resolves this legal

issue and predominates the issue of liability for all class members.[4]  Furthermore,

the court finds this issue so predominates this action that resolution of this issue

will, in essence, resolve each putative plaintiff's claim(s) against UPS, leaving

only the issue of damages to be resolved.  Because the issue before the court is

_____

[4]Defendant phrases this argument as "each class member still must prove for each shipment that UPS failed to make an 'appropriate adjustment,' i.e, that UPS's measurements for the package were wrong and that the customer's measurements were correct.  This is, of course, an individual issue."  Defendant's response, at 27.  This argument demonstrates a fundamental misunderstanding of, or an intentional diversion from, the plaintiff's actual claim.  His claim is that the adjustments made to his charges were not appropriate because the subsequent measurements taken by defendant were not correct.  Thus, because the charges were not "appropriate," UPS is in breach of the contract allowing only "appropriate" charges.  The fact that the allegedly inappropriate charges may have resulted from a variety of measuring errors does not change the fact that the plaintiff sues for breach of contract.  While the resultant allegedly incorrect measurements were caused in multiple ways, that does not mean that the issue of whether the machines were responsible for charge adjustments that were inappropriate, and hence in breach of contract, cannot be established on a class wide basis.

Plaintiff's counsel clearly stated this at the hearing on the motion for class certification: "And I suspect you'll hear a lot of arguments from UPS's lawyers today about how we have to show a package on a particular day was mismeasured.  That is not what this case is about, it has never been what this case is about, and it's not what the law requires."  September 2, 2009 hearing transcript, at 39.  Because the defendant continued to argue about individualized proof at that hearing, noting variances between UPS' measurements and specific customers' measurements, the court stated "...that might go to your case to trial on the merits, but it wouldn't have anything to do with class certification. It would go to whether or not your machines are accurate.  And [plaintiff] would have to prove that they're not; that adjustments based on the current machines, DWS that you have, are not appropriate adjustments because they're not accurate.  That's a jury question....." *Id.*, at 108.

15

subject to generalized evidence which proves or disproves the claim on a simultaneous, class-wide basis, the predominance requirement is met.  *See Allapattah Services, Inc., v. Exxon Corp.*, 333 F.3d 1248, 1260-1261 (11th Cir.2003); citing *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 262 (D.D.C.2002).

Although defendant asserts that individualized proof will be required to establish adjustments are not appropriate, the court finds that the defendant is really arguing that various forms of evidence will be required to establish damages, should the plaintiff prevail on the claim that the DWS machines were inaccurate and hence, any adjustment was not appropriate, in breach of the parties' contract.  Even assuming the presence of such an individualized damages issue, that does not prevent the finding that common issues in the case predominate.  *See Allapattah Services*, 333 F.3d at 1261 (citations omitted).

2.  *Superiority*

Superiority is determined by comparing the efficiency and fairness of all available methods of adjudicating the matter.  The court finds that a class action for the pursuit of these claims is superior to hundreds, if not thousands, of individualized claims against UPS, each requiring identical proof and identical defenses, from which the plaintiff's recovery in any particular case will be

16

minimal.  In fact, the individual plaintiffs' potential for recovery is so small that, absent a class action, the vast majority of putative plaintiffs would never pursue their claims.  As such, the court finds class members interest in individually controlling the prosecution or defense of separate actions to be virtually non-existent.

"The interests of individuals in conducting separate lawsuits may be so strong as to call for denial of a class action. On the other hand, these interests may be theoretic rather than practical; the class may have a high degree of cohesion and prosecution of the action through representatives would be quite unobjectionable, or the amounts at stake for individuals may be so small that separate suits would be impracticable." *Amchem*, 521 U.S. at 616, 117 S.Ct. at 2246.  The Supreme Court stated that the core purpose of Rule 23(b)(3) is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation.  *See id.*, at 617 (noting that "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.") (internal quotations omitted).  *See also Mace v. Van Ru Credit Corp.*  109 F.3d 338, 344 (7th Cir.1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for

any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.").  Because the majority of the potential individual recovery amounts at issue here are too small to warrant individual litigation, the court finds the class action format superior to that of individual claims.

### A.  Rule 23(b)(3)(C): The desirability or undesirability of concentrating the litigation of the claims in the particular forum

In determining whether proceeding as a class action is superior to other forms of litigation, the court has considered whether the law applicable to plaintiff's breach of contract claim against defendant will apply to all such claims throughout the putative class.   Undeniably, the putative plaintiffs reside throughout the United States.  The Court will generally have to apply the law of the state where each contract was made, unless the Court finds that there are no material differences in the applicable state laws.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985).  However, class certification is a realistic policy "if a claim is based on a principle of law that is uniform among the states" or "if the applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards [.]"

*Klay,* 382 F.3d  at 1262.  Plaintiff has the burden to show uniformity among the laws of the fifty states or that there is a small, groupable number of applicable standards.  *Id*.

Under Alabama law, the elements of a breach-of-contract claim "are (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Financial Corp.*, – So.2d – ,  2009 WL 2723334, 6 (Ala.2009) (citing *Reynolds Metals Co. v. Hill*, 825 So.2d 100, 105 (Ala.2002). "'The requisite elements of [a valid contract] include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract.' " *Avis Rent A Car Systems, Inc. v. Heilman,*  876 So.2d 1111, 1118 (Ala.2003) (quoting *Ex parte Grant*, 711 So.2d 464, 465 (Ala.1997) (quoting *Stength v. Alabama Dep't of Fin., Div. of Risk Mgmt.*, 622 So.2d 1283, 1289 (Ala.1993)).

The court also finds that, although the defendant asserts the law of numerous states will have to be applied, each state has nearly identical requirements for proof of a breach of contract.  Alabama's law in this regard is not unusual or against the law of the other 49 states.  The application of various state laws would not be a bar where, as here, the general policies underlying common law rules of contract interpretation tend to be uniform.  *Kleiner v. First Nat. Bank*

19

*of Atlanta,* 97 F.R.D. 683, 694 (D.C.Ga.1983), citing *Jennings Oil Co., Inc. v. Mobil Oil Corp.*, 80 F.R.D. 124, 130 (S.D.N.Y.1978).   This has been echoed by the Eleventh Circuit in the statement "A breach is a breach is a breach, whether you are on the sunny shores of California or enjoying a sweet autumn breeze in New Jersey." *Klay,* 382 F.3d at 1263, citing *Black's Law Dictionary* 200 (8th ed. 2004) (defining "breach of contract" as "[v]iolation of a contractual obligation by failing to perform one's own promise").[5]  See also *Leszczynski v. Allianz Ins.,* 176 F.R.D. 659, 672 (S.D.Fla.1997)("As long as the general policies underlying common-law rules of contract interpretation tend to be uniform, the rationale of

---

[5]In *Klay*, the Court stated:

[T]he plaintiffs allege that the only real legal issue pertinent to their breach of contract claims is the definition of "breach," which does not differ from state to state. Judge Marcus once held, "Whether [a] contract[ ] ... has been breached is a pure and simple question of contract interpretation which should not vary from state to state." *Indianer v. Franklin Life Ins. Co.*, 113 F.R.D. 595, 607 (S.D.Fla.1986), overruled in part on other grounds by *Ericsson GE Mobile Communs., Inc. v. Motorola Communs. & Elecs., Inc.*, 120 F.3d 216, 219 n. 12 (11th Cir.1997); *accord Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 672 (S.D.Fla.1997); *see also Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 694 (N.D.Ga.1983) ( "The application of various state laws would not be a bar where, as here, the general policies underlying common law rules of contract interpretation tend to be uniform."). Based on "genius, general knowledge and previous information," *Penn. Nat'l Mut. Cas. Ins. Co. v. Barnett*, 445 F.2d 573, 575-76 (5th Cir.1971), we are inclined to agree.

*Klay*,  382 F.3d at 1262 -1263

*Kleiner* should control in the instant case. Whether the [] provision has been breached appears to be a pure and simple question of contract interpretation which should not vary from state to state. Absent evidence to the contrary, it is unlikely that the application of Florida's rules of contract interpretation would be any different from any other state's rules or adversely affect any class member's substantive rights").

The court notes that Rule 23 is flexible, and an order certifying a class may be amended to restrict the class or to create appropriate subclasses.   If subsequent development of the issues reveals other material differences in the impact of state laws upon the contracts, the court may create subclasses or issue such orders as are necessary.  *See Kleiner*, 97 F.R.D. at 695 (citations omitted).

## III.  CONCLUSION

Having considered the foregoing, and being of the opinion plaintiff's motion for class certification is due to be GRANTED;

It is ORDERED by the court that said motion is GRANTED.  The court ORDERS the following class be certified, with the plaintiff to bear the burden and costs of preparing the notices and notifying class members:

> All contracted UPS customers between May 15, 2006, and the present who shipped packages with UPS from one location in the United States to another location in the United States wherein the shipper

entered into the UPS system, including but not limited to the iShip and Worldship systems, the height, length and width of the packages which UPS used to determine the dimensional weight, which UPS audited the packages, and based upon those audits, entered new and larger dimensions from those entered by the customer, resulting in a higher charge to the customer.

Counsel are directed to confer and to prepare and submit to the court a proposed notice to class members for the above described class within fifteen (15) days.

DONE and ORDERED this the 29th day of September, 2009.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE