FILED
2009 Nov-17  AM 11:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

BARBER AUTO SALES, INC.,
individually and on behalf of all
persons similarly situated,

      PLAINTIFF,

v.                                CASE NO.: CV-06-J-4686-NE

UNITED PARCEL SERVICES, INC.,

      DEFENDANT.

## MEMORANDUM OPINION

Defendant having filed a motion for reconsideration (doc. 137) and a brief in support of said motion (doc. 138), the plaintiff having filed a response (doc. 141), the defendant having filed a reply (doc. 142), and the plaintiff having filed a sur-reply (doc. 144) and the court having considered said pleadings, finds as follows:

In its initial motion and brief, the defendant raises two issues with the Court's Order of September 29, 2009, granting class certification, namely whether the court considered the application of the contract notice requirement to individuals within the class definition, and whether the court considered preemption of the plaintiff's claim by the Federal Aviation Administration Authorization Act of 1904 (the "FAAAA"), 49 U.S.C. §§ 14501(c) and 4713(b)(4).  Because both of these contentions were previously briefed by the parties and addressed by the court, they were not

specifically referenced in the court's Class Certification Order.  However, in the interest of leaving "no stone unturned" and "no dead horse unbeaten," the court again considers each of these issues.

### A.  The Timely Notice Requirement

As the defendant recognizes, "[i]n 2007, this Court held that failure to meet the contractual 180-day notice requirement bars a claim." Defendant's motion (doc. 138) at 2.  The parties agree that the contract defendant has with each of its customers requires notice of a billing dispute within 180 days of receiving a contested invoice.  The plaintiff asserts, as it has previously, that receipt of the class action lawsuit in 2006 served as notice that each potential class member was contesting invoices within 180 days of the filing of the class action complaint.  The court previously noted:

> Barber filed this breach of contract action against UPS alleging that UPS "manipulated [the] audit procedures so that it could improperly invoice plaintiff increased shipping charges based on false dimensions." First Am. Compl. at ¶ 12.  Barber sued UPS both individually and on behalf of a class of similarly situated persons. *Id*. at ¶¶ 15-22.

June 5, 2007, Opinion (doc. 34) at 3.  At that time, UPS argued that Barber's breach of contract claim must be dismissed to the extent that Barber sought recovery for any breach that accrued more than 18 months before filing the lawsuit, pursuant to 49 U.S.C. § 14705(b).  The court held that

> Accordingly, the court finds that the 18 month limitations period set out in § 14705(b) applies to Barber's state-law breach of contract

2

claim. UPS's motion for a judgment on the pleadings is due to be **GRANTED** to the extent that Barber seeks recovery for any breach that accrued more than 18 months before filing the lawsuit.

June 5, 2007 order at 10. The court then found the 180 day contractual provision further limited the available claims and dismissed any claims for which plaintiff did not give notice to the defendant that it was disputing the charges. *Id.* In other words, the court limited the available claims to those within 180 days of filing the complaint.

The defendant again raised the 180 day notification provision in its response to the plaintiff's motion for class certification, when it stated that the court needed to make "an individualized inquiry to ....(2) verify that the notice was provided within 180 days of the date the customer received the invoice containing that charge." Defendant's response, at 25-26 (doc. 119). The contract provision in question reads as follows:

> Shippers requesting an invoice adjustment (e.g., adjustment of Charges based on an incorrect rate, billable weight, account number, failure to tender a package, or type of service, etc.) or a refund due to a duplicate payment must notify UPS of the request within 180 days of receiving the contested invoice, or any billable dispute is waived. A partial payment against an invoice is not considered a request for an invoice adjustment.[1]

―――――――――――――――――

[1]Similarly, 49 U.S.C. § 13710(a)(3)(B) conditions a shipper's right to challenge a bill on its contesting the same within 180 days of receipt of the claim. While the defendant again raises this code provision, the court has previously ruled that there is solely a state law breach of contract claim before it. Whether the 180 day limitations period is imposed pursuant to the

Contract, ¶ 450, submitted as exhibit 2 to doc. 119.  During the hearing on the

motion for class certification, the court held the following discussion with

plaintiff's counsel on this issue:

>   THE COURT: So you're saying you can actually look and see which ones were made wit

>   MR. GRAMMAS: Well, we could if we had to, yes.

>   THE COURT: I know the contract doesn't say he can't sue unless he complains within 18

>   MR. GRAMMAS: Right. And here's the reason that's relevant, the
>   way I see the notice. This is a contractual notice requirement. When
>   they're citing cases on warranties, they're not relevant.
>       UPS could have said that unless you give written notice on the
>   exact date that it shipped -- it could have been very specific in what
>   notice they require -- then your claims are waived. They did not do
>   that. All they said was you cannot advance a claim that we haven't
>   been notified of within 180 days of filing the complaint.
>       In my assessment, filing this as a class action lawsuit, okay,
>   Barber -- whether he ever gave notice or not. When Barber filed his
>   lawsuit, essentially it becomes a 180-day statute of limitations.

>   THE COURT: Okay.

>   MR. GRAMMAS: Okay? So of course, Barber did give notice and no
>   one disputes that. But if Barber hadn't given any notice and we sued,
>   the contract does not prevent that. You go back 180 days, and he gets
>   to recover any shipping charges during that period of time. It's the
>   same thing for every single class member.
>       The contract does not say -- and a lot of defendants are doing it
>   these days. You know, "You can't sue us on a class. You're
>   arbitrating these claims." There are all kind of things they're trying to
>   get fancy with recently. But this contract doesn't say that. It says,

_____

United States Code or the parties' contract provision does not alter this analysis.

"You've got to give us notice." Well, there's no question that notice has been given not only from Barber, not only from filing of the lawsuit, but there have been -- the 2005 customer survey, they know about this. They know that that's the most common problem.

And there was a customer -- it's in the briefs. I don't remember exactly what date. I think it was in September of '05.  A customer similar to Barber wrote an e-mail to them. They produced it. And it said, "Hey, this can't be happening to just me. I may have to sue you on a class action."

THE COURT: Oh, I saw that e-mail.

MR. GRAMMAS: So they've had notice since '05 of this.

Hearing transcript at 42-44.  Also at the class certification hearing, the court had

the following dialogue with defense counsel:

MR. WHITE: Is number one, what the plaintiff is asking this Court to do is assume that all of the -- this is for class purposes. Their class consists of all customers who provided measurements based upon the assumption that all those measurements were correct and that all of UPS's audited numbers were incorrect. They're asking your Honor to prejudge the case in that respect when it can -- and this goes to the issue of typicality, predominance, whether there's a superior way to handle this dispute, and manageability, is when there is no way when the case is tried to ever determine whether the customer's inputted dimensions are correct without the packages.

THE COURT: Well, if every person who was a customer of UPS files a lawsuit in his small claims court in his or her little courthouse, wherever they live in the United States, about something that they filed a notice about 180 days before or 90 days before or 31 days before, the package is still gone. And you would have to defend the lawsuit the same way in small claims court as you would in federal court in the Northern District of Alabama by saying 65 percent of their measurements result in credits for the customer. Our machines

are calibrated. Our machines are checked. Our people are trained. And I mean, I'm not saying that that is not correct. The jury may say absolutely your system is appropriate. The jury may say it is -- they've done everything they can do and we believe that since 65 percent of the people end up with credits as opposed to supplemental charges, UPS's system is appropriate or their charges are appropriate adjustments. But the defense of the lawsuit -- which is what this class certification is about. The defense of the lawsuit would not be different from a defense of a small claims lawsuit for $4.25 in Timbuktu.

MR. WHITE: But your Honor, we don't cure those proof problems which an individual plaintiff --

THE COURT: But you're saying they can't file a lawsuit because they can't prove it.

MR. WHITE: I didn't say that. I didn't say that. I'm saying you have to look at each individual transaction.

THE COURT: No, you do not. Because you cannot, you cannot, Mr. White, you cannot look at each individual transaction ever if the package is gone. Ever. You cannot.

MR. WHITE: Well, there may be other ways the plaintiff could prove their case. And all I'm suggesting to you --

THE COURT: No, I'm saying you, because you're the one that keeps saying that you would have to have the package to see if the customer was correct. And you cannot -- the plaintiff would have to prove that it was an inappropriate adjustment. And, you know, the plaintiff has that burden of proof. You don't have a burden to prove anything.

MR. WHITE: And we don't cure any of that by turning it into a class action.

THE COURT: But it's not a matter of curing it. The matter is whether

or not the defense would be the same for this class as it would be for Mr. Smith in Oklahoma for a 4.2 shipping charge in small claims court.

Hearing transcript at 58-60.

In its opinion granting class certification, the court found

The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action presenting his or her rights. *Smilow v. Southwestern Bell Mobile Systems*, 323 F.3d 32, 41 (1st Cir. 2003) *citing Mace v. Van Ru Credit Corp*., 109 F.3d 338, 344 (7th Cir. 1997).
....

Numerous other courts have found that claims arising from interpretations of a form contract present the classic case for treatment as a class action. *See e.g., Allapattah Services, Inc. v. Exxon Corp*., 333 F.3d 1248, 1260-61 (11th Cir.2003) (finding that defendant allegedly cheated all class members in the same way by secretly implementing a price change); *Smilow v. Southwestern Bell Mobile System*, 323 F.3d 32, 42 (1st Cir.2003)(finding class action appropriate as case turned on interpretation of form contract executed by all class members and defendant); *Kleiner v. First Nat. Bank of Atlanta*, 97 F.R.D. 683, 692 (N.D.Ga.1983) ("claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such"). Thus, the court is convinced that issues of fact and law common to the class exist and affect all class members. *See* Fed.R.Civ.Pro. 23(a)(2).

This is now the third time the court has addressed the 180 day notice provision in the contract.  Two years ago the court implicitly held, and now explicitly holds, that for purposes of this class action, no plaintiff may recover

7

against UPS for any claim which arose more than 180 days prior to filing of the lawsuit.  The lawsuit, filed on November 15, 2006, suffices under the contract between the parties as notice of a claim for purposes of the 180 day contract requirement.  That original pleading put the defendant on notice that (1) a class action was being brought against it (2) by all customers in the United States who purchased shipping services from defendant and who were assessed by UPS "shipping charge corrections."[2]  These statements appear on the first page of the original complaint in this case.  Thus, at the point UPS received the complaint in this action, it did not even need to flip to the second page of that pleading to be on notice that it was being sued by a class of customers who believed they were improperly assessed shipping charge corrections.

Under the notice provision in the contract, all that is required is that "[s]hippers requesting an invoice adjustment ...  must notify UPS of the request

---

[2]This was not defendant's first indication that it had customers who believed they were receiving incorrect charges or that it may be sued for these charge corrections. In September 2005 the defendant received an email from a customer stating in relevant part

> In our estimation we have been overbilled in excess of $1000 over the past few years.  We would like to resolve this matter amicably but prior phone conversations with your company made me believe that this would not happen.  We are currently seeking out other customers who have and/or are experiencing this same problem.  ***We hope that this will not lead to a class action suit*** but I find it difficult to believe that we are an isolated case.

Plaintiff's exhibit 37 (submitted as doc. 116-51)(emphasis added).

within 180 days of receiving the contested invoice...."  Contract, ¶ 450, submitted as exhibit 2 to doc. 119.  The contract does not specify a form of notice, that notice must be in writing, or that any specific procedure be followed.[3]  As the plaintiff notes, the contract does not even require the notice to identify which invoice or particular shipping charge is being disputed.  It further does not require notice as a precondition to filing a law suit. *See* plaintiff's response, at 2.  Although the defendant replies that the purpose of the notice requirement is to resolve billing disputes without resort to litigation (defendant's reply at 7), nothing in the parties' contract provides a legal basis for such statement.[4]

UPS drafted the contract it uses with the relevant shippers.  As such, defendant could have been more specific as to what constitutes notice, but was not.  Because the term "notice" is at best ambiguous, the court must interpret

---

[3]Defendant accepts phone calls from customers for the purpose of notice.  Daniel Okon, Corporate Revenue Recovery Manager for defendant, testified during his deposition that "if a customer calls and challenges a dimensional weight adjustment, we will give them credit."  Okon depo. at 197 (doc. 116-3).  He noted that "eighty-nine percent of the time they call us with a concern, we give them their money back, yes."  *Id.,* at 243.

[4]*SunTrust Bank v. Hightower*, 660 S.E.2d 745 (Ga.App.2008) does not require a different finding.  In that case, the plaintiff sought to recover liquidated damages due to defendant's failure to comply with a Georgia Code provision concerning notification of the clerk of the superior court of the county where an instrument was recorded when the indebtedness evidenced by such instrument was paid in full.  The Georgia Court held that before proceeding on the statutorily created action, an insured, who has knowledge of the early payoff of indebtedness covered by credit life or other insurance, to give notice of that event to an insurer who lacks such knowledge.  *Id.*, 660 S.E.2d at 749.  This case is not applicable to the facts before this court, where the defendant had knowledge of the facts giving rise to the plaintiff's claims.  *See infra.*

"notice" against the defendant, and in favor of the plaintiff.  "It is a well-established rule of contract construction that any ambiguity in a contract must be construed against the drafter of the contract." *SouthTrust Bank v. Copeland One, L.L. C.*, 886 So.2d 38, 43 (Ala.2003) (citations omitted).  Further, a court interpreting a contract must give its terms "their clear and plain meaning." *Murray v. Holiday Isle, LLC,*  620 F.Supp.2d 1302, 1326 (S.D.Ala.,2009), citing *Chris Myers Pontiac-GMC, Inc. v. Perot*, 991 So.2d 1281,  1284 (Ala.2008).  The clear and plain meaning of the word "notice" is "formal or informal warning or intimation of something: ANNOUNCEMENT."  *Webster's Third New International Dictionary.*  According to *Black's Law Dictionary*,

> A person has notice of a fact or condition if that person (1) has actual knowledge of it; (2) has received information about it; (3) has reason to know about it; (4) knows about a related fact; or (5) is considered as having been able to ascertain it by checking an official filing or recording.

*Black's Law Dictionary* (8th ed. 2004).  Given such definitions, and that the contract requires only that "[s]hippers requesting an invoice adjustment... must notify UPS ... within 180 days of receiving the contested invoice," the court finds that receipt of the complaint in this case suffices as "notice" that all shippers of packages who based on invoices believe they were overcharged in the previous 180 days were seeking reimbursement.

The defendant's reliance on the cases cited in its memorandum in support of its motion for reconsideration (doc. 138) and again in its reply (doc. 142) is misplaced.  Although *Cohen v. Implant Innovations, Inc*., – F.R.D. – , 2008 WL 3927223, * 7 (S.D.Fla.2008), does contain the language defendant quotes, that case dealt specifically with breach of express and implied warranties claims under Florida law for losses suffered by periodontists due to defective dental implants manufactured by the defendant.  Omitted from the quotation by the defendant to this court was the specific reference to the Florida statute that requires notice of a breach of express warranty claim to the seller of the item in question.  As the case before this court involves neither a breach of warranty claim nor Florida law, the court finds *Cohen* has no relevance to facts before this case.   Similarly, *Barden v. Hard Millwork Co.*, 249 F.R.D. 316 (E.D.Wis.2008), was a breach of warranty case involving the failure of inert gas filled windows to retain their inert gas, brought pursuant to the Class Action Fairness Act.  In addressing differences in various states' laws concerning breach of warranty, the court ruled that the states' requirements for such a suit could be broken down into four subclasses.  *Id.*, at 320-321.  Because some states required reliance, some states required notice, some states required both and some states required neither, the court ruled that:

The laws in the first three of plaintiff's proposed sub-classes require a

11

determination of whether each individual class member relied on the warranty and/or provided pre-litigation notice to the defendant. To make these determinations would appear to require a relatively intensive factual inquiry into each individual case. Variations in the laws within the sub-classes would further complicate the matter. Thus, as to the first three proposed sub-classes, it seems likely that a significant part of each member's claim would have to be resolved on an individual basis, thus defeating the purpose of a class action. Sub-class (4) however includes laws that do not require proof of reliance or pre-litigation notice. Under such laws, it appears that the principal issues would relate to the warranty and the alleged defect, which issues seem capable of fairly simple resolution on a class basis. Thus, as to plaintiff's fourth proposed sub-class but not as to the first three, I conclude that common legal questions predominate over individual issues.

*Barden v. Hurd Millwork Company, Inc.*,  249 F.R.D. 316, 321 (E.D.Wis.2008).

Like *Cohen*, the court in *Barden* was addressing breach of warranty claims, based on the failure of a product to perform as advertized, not breach of contract claims.

*See also Drobnak v. Anderson Corp.*, 561 F.3d 778 (8th Cir.2009) (same); *In re PPA Prods. Liab. Lit.*, 214 F.R.D. 614 (W.D.Wash.2003), concerned whether a class action was appropriate for individuals who purchased phenylpropanolamine and possessed unused portions of it after November 2000, when the product was withdrawn from the market.  *Id.*, at 615.  After noting that the class would be of "immense size" and remarking that "the individualized inquiries surrounding class identification would be prodigious and would defy the court's ability to effectively and efficiently manage the litigation," the court, by footnote, made the comment

defendant cites regarding notice.  That footnote, in its entirety, states:

> Although the court finds the class identification problem significant
> enough, in and of itself, to prohibit the manageability of this
> litigation, additional complications are worthy of mention. For
> instance, the court would also be faced with computing individual
> damages. *See, e.g., Schwartz*, 183 F.R.D. at 680 (although differences
> in damage calculations for individual class members would not alone
> prevent class certification, court's decision was reinforced where
> "damages questions [were] layered onto the other issues of fact and
> law[.]"); *see also* 5 Moore's Federal Practice § 23.49[5][b] ("[T]he
> presence of individual issues increases the difficulty of assessing
> injury and calculating damages.") Moreover, along with the potential
> for additional material state law variations, the breach of warranty
> and unjust enrichment claims could require individualized factual
> inquiries into issues such as causation, materiality, notice, and/or
> breach. *Cf. In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 68-69
> (S.D.N.Y.2002) (finding individual issues would predominate on a
> restitution of purchase price claim even in the absence of
> compensatory damages claims).

*Id.*, at 620 n.8.  In context, the cited language has no relevancy to the issues before

this court.  Again in *Arrowsmith v. Broward County*, 633 So.2d 21 (Fla. 4th

DCA.1993), the issue before the court was whether notice had been given for the

plaintiffs' claims against defendants Broward County and the state Department of

Insurance, where such notice was a precondition to suit under Florida law.[5]  To

---

[5]The relevant statute there stated:
(6)(a) An action may not be instituted on a claim against the state or one of its
agencies or subdivisions unless the claimant presents the claim in writing to the
appropriate agency, and also, except as to any claim against a municipality or the
Florida Space Authority, presents such claim in writing to the Department of
Financial Services, within 3 years after such claim accrues and the Department of
Financial Services or the appropriate agency denies the claim in writing; except

state the obvious, the case before this court has no claims against any state or any

subdivision of any state.  Thus, notice is not a condition precedent to bringing this

suit.  Unlike the state of Florida, the defendant here has no protection from suit

based on sovereign immunity as set forth in the Constitution of the State of

Florida.   The court having reviewed the remainder of the cases relied on by the

defendant, finds none of them have any relation to a class action breach of contract

claim.  *See e.g., Mervak v. City of Niagra Falls*, 420 N.Y.S.2d 687, 691-692

(N.Y.Sup.1979) (holding that in suit alleging exposure to deadly toxic chemical

wastes over long period of time, "question of 'timeliness' of a Notice of Claim

which alleges personal injuries is not a subject matter for class action..." where

filing Notice of Claim was precondition to filing suit against public corporation

pursuant to statute); *Shenandoah Chiropractic, P.A. v. National Specialty Ins. Co.,*

526 F.Supp.2d 1283, 1288 (S.D.Fla.2007) ("The Florida PIP statute states that 'as

---

that, if such claim is for contribution pursuant to § 768.31, it must be so presented
within 6 months after the judgment against the tortfeasor seeking contribution has
become final by lapse of time for appeal or after appellate review or, if there is no
such judgment, within 6 months after the tortfeasor seeking contribution has either
discharged the common liability by payment or agreed, while the action is pending
against her or him, to discharge the common liability.

(b) For purposes of this section, the requirements of notice to the agency and
denial of the claim pursuant to paragraph (a) are conditions precedent to
maintaining an action but shall not be deemed to be elements of the cause of
action and shall not affect the date on which the cause of action accrues.

Section 768.28(6), Florida Statutes.

14

a condition precedent to filing any action for benefits under this section, the Insurer must be provided with written notice of an intent to initiate litigation.' Fla. Stat. § 627.736(11)(a)."); *Gonzales v. Rivkind*, 858 F.2d 657, 663-664 (11th Cir.1988) (in case concerning seizure by insurance of vehicles used to transport illegal aliens, Court reversed judgment in favor of class by district court because no violation of due process occurred).

The defendant also relies on *Bishop's Property & Investments, LLC v. Protective Life Ins. Co.*, 255 F.R.D. 619 (M.D.Ga.2009).  In that case, the court noted that certification of a class would require "[i]mplying contractual duties upon parties who neglected to spell out those duties in their written contracts typically requires a uniquely individual analysis on a case-by-case basis."  *Id.*, at 625-626.  Because the case before this court does not require any terms to be implied into the relevant contracts, *Bishop's Property* is not of assistance to the defendant.[6]

The court finds, under the facts of this case, notice of the class action suit was sufficient notice to satisfy the terms of the contract between the parties.  The

---

[6]The court in *Bishop's Property* explained that while a notice requirement could be satisfied by filing of a lawsuit, in the facts before it, such a notice failed to provide the defendant notice of which insureds made early payoff of loans.  The court noted that the defendant would have no means of access to this information, triggering its contractual duty, outside of notification by the individual plaintiffs.  *Id.*, 255 F.R.D. at 627.

15

court's rationale is twofold.  First and foremost, the entire purpose of notice,

whether in this case or in any other, is to make defendant aware of a problem prior

to a plaintiff running off to court to file a lawsuit.  Here, defendant had been

repeatedly notified by numerous customers that defendant's customers believed

they were charged inappropriate additional fees for shipping packages.[7]

---

[7]Numerous exhibits submitted in support of the motion for class certification, at the
hearing on the motion and in opposition to the motion, support the finding that defendant knew
customers were complaining about allegedly inappropriate charges.  In March 2006 an email
from Mike Stutler to Timothy McElroy states "someone in this company has to point out the
process flaws we have at UPS."  Plaintiff's exhibit 4, submitted as doc. 116-19.  Defendant's
document entitled "Revenue Recovery Strategy for 2008 and Beyond," dated September 6, 2007,
which appears to have been a power point presentation, contains the following snippets:
>Customer Experience and Perception
>• One out of every 7 packages billed has an adjustment
>• Back of the bill (SCCs) has become larger than the front
>• "UPS trying to nickel and dime me to death"
Plaintiff exhibit 5, submitted as doc. 116-20, at 4.  That same document notes that the "DWS
units installed today are NOT up to NIST Standards – Not as accurate as what we are installing
today."  It further contains:
>Why not replace the "catch me if you can" system we have today with a new
>process..."
 Id., at 7.  Several pages further in that exhibit is a document entitled "The Most Common UPS
Billing Problems Align With What Customers View As Most Irritating" and lists first "Disputes
of box size and oversize charges."  Id., at 11.  *See also* plaintiff's exhibit 11 ("Bill Steering
Committee Minutes – November 7&8, 2006"), submitted as doc. 116-25, at 3 ("DIM Weight –
dimensions and SCC's and lack of escalation procedures leads to courtesy adjustment.  Some
agents indicate that we automatically give credit if customer states their dimensions are correct –
re-training opportunities exist," "Need better technology systems to handle adjustment and
customer concerns documentation," "Dimensions for SCC's – customers are smarter than we
believe"); plaintiff's exhibit 12 (April 5, 2006, memo from Jim Minor to Steve Sowinski),
submitted as doc. 116-26 ("Our audit findings did prove that the shipper bills themselves (sic)
correctly .... The UDWS detail behind the examples listed above proves the inconsistencies
throughout our DWS network..... the Metro Detroit Finance Department believes that [shipper] is
correctly billing themselves.... and the above box types should not be receiving Shipping Charge
Corrections...."); plaintiff exhibit 19 (Memo to Dan Okon from Scott Wigginton, dated
September 21, 2006), submitted as doc. 116-34, at 3, 9 ("noticed several instances where
irregular packages were not spaced out the required 2".  This must be done in order to prevent

Defendant handled reimbursements to each of the complaining customers on a case by case basis, but repeatedly opted not to change the manner in which it conducted its business.  As such, the court finds merit to the plaintiff's repeated arguments of the futility of every aggrieved individual notifying UPS of an inappropriate charge.

Hand in hand with this basis for the court's holding is the finding that the entire purpose of a class action is to empower aggrieved individuals to bring suit when any one claim is of minimal value.  According to the defendants, who have repeatedly stressed to this court the individualized nature of any one shipper's claims, each of the potential class members file its own notice of claim and, assuming it is not resolved to his or her satisfaction, should then proceed to file a small claims case, for four or five dollars in many cases, for each allegedly improper charge.  The parties do not dispute that defendant audits 389,000 packages a day and that roughly half of those audits result in credits to customers.

---

two packages appearing as one to the DWS tunnel.  This could cause packages to be miss-measured (sic);" "Not properly calibrating or disabling units – This could potential (sic) overcharge or miss bill our customers.  Units that do not pass calibration must be disabled in order to prevent this);" plaintiff's exhibit 9, submitted as doc. 116-24 ("it is hard to support SCC charges – often it becomes our word versus the customer's word").

   *See also* plaintiff's exhibit 33 (submitted as doc. 116-47)("We have continually had oversize charges assessed to our account since the fall of last year, 2004.... Besides the inconvenience of having to call UPS or emailing our current rep [redacted] to have the charges removed, it is just wrong to overcharge us continually for months on end....").

*See e.g.*, hearing transcript at 50, 56-57.  Logically, the other half of those audits

result in additional shipping charges being assessed to customers. Under

defendant's argument, and applying simple math, the individual customers would

have to make 194,500 claims concerning improper charges for each day's

shipping, and potentially file 194,500 small claims cases **per day** of shipping.  *See*

defendant's motion for reconsideration, at 4-6.  Such a requirement eliminates the

entire logic behind class actions.

Supporting this court's ruling that receipt of the class action lawsuit is

sufficient to satisfy the notice provision is *American Pipe & Construction Co. v.*

*Utah*, 414 U.S. 538, 550-51, 94 S.Ct. 756, 764-65, 38 L.Ed.2d 713 (1974).

In *American Pipe*, the Supreme Court ruled that

> there remain no conceptual or practical obstacles in the path of
> holding that the filing of a timely class action complaint commences
> the action for all members of the class as subsequently determined.
> Whatever the merit in the conclusion that one seeking to join a class
> after the running of the statutory period asserts a 'separate cause of
> action' which must individually meet the timeliness requirements,
> *Athas v. Day*, 161 F.Supp. 916, 919 (D.Colo.1958), such a concept is
> simply inconsistent with Rule 23 as presently drafted. A federal class
> action is no longer 'an invitation to joinder' but a truly representative
> suit designed to avoid, rather than encourage, unnecessary filing of
> repetitious papers and motions.

*American Pipe & Const. Co. v. Utah,*  414 U.S. 538, 550, 94 S.Ct. 756, 764-765

(1974).  Relying on *American Pipe*, in *Kornberg v. Carnival Cruise Lines, Inc.,*

741 F.2d 1332 (11th Cir.1984),  the Eleventh Circuit held, "The filing of a class

action, however, commences the suit for the entire class for the purpose of the

statute of limitations whether or not each member of the class is cognizant of the

action.  *Id*., at 1336-1337, citing *American Pipe*,  414 U.S. at 550-51, 94 S.Ct. at

764-765.  The *Kornberg* court further notes that "[t]here is no difference between

contractual and statutory limitations.  *Kornberg,* 741 F.2d at 1337.  *See also*

*Latman v. Costa Cruise Lines, N.V.*, 758 So.2d 699 (Fla. 3rd DCA 2000) (rejecting

argument that as a prerequisite to maintaining a class action each member must

have submitted a written claim in accordance with limitations period outlined on

ticket; the contractual provision could be satisfied or compliance excused as to the

class plaintiffs).

### B.  The FAAAA

The defendant also argues that the plaintiff's claim is a "direct attack on the

method and manner in which UPS sets prices and provides services and, in fact,

challenges methods used by the entire shipping industry."  Defendant's

memorandum, at 9 (doc. 138).  More than two years ago, in a memorandum brief

filed on March 14, 2007, the defendant argued to this court that "the FAAAA

preempts all non-contract causes of action...." and "the only remaining claim that

survives FAAAA preemption is Barber's claim for money damages for routine

breach of contract."  Defendant's memorandum brief (doc. 23), at 2.

Defendant now argues that the breach of contract claim is preempted because it challenges defendant's "system."  Defendant's memorandum (doc. 138), at 9.  However, the plaintiff has not changed its claim in the past two years.  The plaintiff has maintained, and still maintains, that the system used by UPS for auditing packages measured by the shippers is flawed, and thus the supplemental shipping charges resulting from that system are "inappropriate."  The argument continues that the flaw, creating additional charges for shippers, is known to UPS, and that UPS continues to use the flawed system because it increases revenue.[8] The plaintiff thus states the resulting adjustments to shipping costs are unreasonable, and hence in violation of the contract provision allowing "appropriate" adjustments to be made.  In other words, it is not the adjustments themselves over which the plaintiff claims a breach, but the fact that the adjustments are based on audits from allegedly inaccurate machines.

In spite of defendant's argument otherwise, this is not an attack "on the method and manner in which UPS sets prices and provides services," nor a

_____

[8]*See e.g.*, plaintiff's exhibit 30 (submitted as doc. 116-44)(stating "Tolerances taken off DWS appears to have generated more revenue than expected"); Plaintiff's exhibit 2 (submitted as doc. 116-17), at 8 ("The Money is Following DWS!); plaintiff's exhibit 42 (submitted as doc. 116-56) at 5 ("Adjust the Charge if All Other Alternatives are Exhausted").

"challenge[] [to] methods used by the entire shipping industry."  Rather, it is an assertion that UPS is using inaccurate machines, knows they are inaccurate, but continues to audit packages in this manner because such action is profitable.  This is indeed a claim for breach of contract, nothing more and nothing less.  It certainly is not an "attempt to regulate UPS's rates and services through state law."  Defendant's memorandum, at 10.  The plaintiff has not challenged defendant's rates and those rates are not at issue before this court.  All the plaintiff seeks is to have the defendant use accurate measuring devices in auditing the shippers' claimed package measurements.  The plaintiff proceeds on the theory that inaccurate machines yield inappropriate billing adjustments.  Of course, the converse, should it be proved, is also true.

Defendant's argument that this case is about anything other than a routine breach of contract, such as rates, routes, or services, is contravened by the pleadings before this court.  The plaintiff is not asking the defendant to "limit its right to use MDMDs to audit packages...." as argued by the defendant.  Defendant's memorandum at 11.  Rather, the plaintiff is asking the defendant to ensure the accuracy of the MDMDs prior to charging the plaintiff additional shipping fees based on the use of  MDMDs to audit packages so that such additional shipping fees are "appropriate ," as required by the contract.  This case

involves nothing more, and nothing less.

### C.  The Statutory Notice Requirement under the FAAAA

In its reply, the defendant raises a lengthy argument regarding notice requirements found in 49 U.S.C. § 13710(a)(3)(B).  According to the defendant, that code provision states that a shipper must provide a carrier notice of a dispute within 180 days of receiving an invoice.  In relevant part, it actually states as follows:

(a) Miscellaneous provisions.--

(1) Information relating to basis of rate.--A motor carrier of property (other than a motor carrier providing transportation in noncontiguous domestic trade) shall provide to the shipper, on request of the shipper, a written or electronic copy of the rate, classification, rules, and practices, upon which any rate applicable to its shipment or agreed to between the shipper and carrier is based.

(2) Reasonableness of rates; collecting additional charges.--When the applicability or reasonableness of the rates and related provisions billed by a motor carrier is challenged by the person paying the freight charges, the Board shall determine whether such rates and provisions are reasonable under section 13701 or applicable based on the record before it.

(3) Billing disputes.--

(A) Initiated by motor carriers.--In those cases where a motor carrier (other than a

motor carrier providing transportation of household goods or in noncontiguous domestic trade) seeks to collect charges in addition to those billed and collected which are contested by the payor, the carrier may request that the Board determine whether any additional charges over those billed and collected must be paid. A carrier must issue any bill for charges in addition to those originally billed within 180 days of the receipt of the original bill in order to have the right to collect such charges.

(B) Initiated by shippers.--If a shipper seeks to contest the charges originally billed or additional charges subsequently billed, the shipper may request that the Board determine whether the charges billed must be paid. A shipper must contest the original bill or subsequent bill within 180 days of receipt of the bill in order to have the right to contest such charges.

49 U.S.C.A. § 13710.

The court notes, first and foremost, this case is not about the rates charged by defendant to plaintiff. The plaintiff does not contest the rates. The plaintiff contests solely defendant's use of auditing equipment which the plaintiff believes to be inaccurate. Because plaintiff believes that equipment to be inaccurate, the plaintiff asserts that any subsequent billing adjustments based on the remeasurement of packages submitted by plaintiff and others are per se

inappropriate.

Unfortunately, case law concerning the applicability of 49 U.S.C. § 13710(a)(3)(B) to state law breach of contract claims is virtually nonexistent.  The defendant argues that this code provision is a statute of limitations, requiring 180 day notice prior to suit, citing *Carolina Traffic Services of Gastonia, Inc. – Petition for Declaratory Order*.  There, the Surface Transportation Board noted:

> .... If the 180-day requirement were a time limit for seeking a determination by the Board (or by its predecessor, the Interstate Commerce Commission (ICC), prior to the ICCTA) under section 13710(a)(3), it would have been worded as such. Instead, the notification requirement is a broadly worded requirement: it must be satisfied by the carrier "in order to have the right to collect such charges" and must be satisfied by the shipper "in order to have the right to contest such charges." In other words, providing notice to the other party within the statute's 180-day period is a precondition for pursuing a claim, whether the moving party chooses to pursue that claim initially at the Board or in court.

*Carolina Traffic Services of Gastonia, Inc.--Petition for Declaratory Order,* 1996 WL 303722, 3.  In *Carolina Traffic*, the Board did not attempt to define what suffices for "notice" pursuant to that code provision.  In a later ruling, the Board clarified that

> our purpose in issuing CTS, and in issuing this decision, is merely to provide our opinion regarding the Congressional intent in enacting the 180-day rule. Our role regarding motor carrier regulation under the ICCTA is quite limited. Thus, we intend here only to provide guidance, which we hope will assist parties in resolving billing

disputes without unnecessary regulatory intrusion. Because courts, rather than the Board, have the authority to require payment of overcharges [section 14705(b) ], it is ultimately up to the courts to apply the 180-day rule in individual cases. We will, of course, apply the rule in the manner outlined here as to cases presented to us for our opinion.

*National Asso. of Freight Transp. Consultants, Inc. – Petition for Declaratory Order*, 1997 WL 189658, 4. In *National Asso. of Freight Transp. Consultants*, the Board held that "virtually any notification will suffice under the statute provided it is made within the 180 day time period" and that the parties can extend the 180 day period by agreement. *See Avery Dennison Corp. v. Con-Way Transp. Services, Inc*., 2006 WL 3350761, 4 (Ohio App.2006).

Under the familiar *Chevron* framework, the court must defer to an agency's reasonable interpretation of a statute it is charged with administering. *Cuomo v. Clearing House Ass'n, L.L.C.,* – U.S. –, 129 S.Ct. 2710, 2715 (2009); *citing Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Having considered the scant cases and Board rulings dealing with this provision, and giving deference to the Board's interpretations, the court finds 42 U.S.C. § 13710(a)(3)(B) does not dictate a different result from the conclusion the court reached under its initial analysis. Clearly, there is a 180 day notice requirement on the plaintiff before the plaintiff

may contest charges, whether that 180 day requirement is pulled from the parties'

contract or the United States Code.  Neither source of limitation addresses its

applicability in a class action situation.  However, having concluded that, under

state law contract interpretation, the plaintiff's filing of the class action lawsuit

satisfied the contract notice provision, the court is of the opinion that the same

holds true for the United States Code provision.

The United States Supreme Court has repeatedly held that "powers of the

States were not to be superseded by the Federal Act unless that was the clear and

manifest purpose of Congress."  *Wyeth v. Levine*, – U.S. – , 129 S.Ct. 1187, 1194-

95 (2009).  Yet should the court find that application of the 180 day statutory rule

demands a different conclusion from that reached under state law, the court is

clearly allowing a Federal Act to preempt state law interpretation of contracts.[9]

_____

[9]From a much more practical standpoint, the court finds that should each individual
shipper be required to give notice for every contested additional charge resulting from an audit
remeasurement, the entire policy of allowing class actions, that being the problem that small
recoveries do not provide the incentive for any individual to bring a solo action presenting his or
her rights, is nullified.  *See Smilow v. Southwestern Bell Mobile Systems*, 323 F.3d 32, 41 (1st
Cir. 2003) citing *Mace v. Van Ru Credit Corp*., 109 F.3d 338, 344 (7th  Cir. 1997).  Under the
defendant's proposed interpretation, a shipper who sends 100 packages a day could feasibly be
required to give notice 100 times just for one day's shipping.  Such an interpretation of notice
under the statutory scheme would demand just such a ludicrous result.  Defendant asserts that
such a notice requirement serves the purpose of or resolving disputes without resorting to
litigation.  Defendant's reply, at 7.  However, under the specific facts of this case, the plaintiff
has presented evidence that defendant was aware of widespread complaints regarding the
accuracy of its audits and chose to maintain its practice.  For example, defendant states that
"from May 1, 2005 through November 30, 2006, Barber was credited $3,493.84, or 74.7%, of the
$4,679.01 in dimensional billing adjustments issued."  Defendant's reply at 12, citing doc. 119,

This finding is bolstered by the entire statutory scheme which permits carriers to contract with shippers "to provide specified services under specified rates and conditions."  49 U.S.C. § 14101.  The parties here entered such a contract.  That code provision includes the statement that "[t]he exclusive remedy for any alleged breach of a contract entered into under this subsection shall be an action in an appropriate State court or United States district court, unless the parties otherwise agree."  49 U.S.C.A. § 14101(b)(2).   In considering this very section in a case in this very district, another judge noted that "the statute can be read reasonably to mean that a claim for breach of contract, as traditional a common law remedy as can be, arises under state law..."  *Transit Homes of America, Div. of Morgan Drive Away, Inc. v. Homes of Legend, Inc*.,  173 F.Supp.2d 1192, 1197 (N.D.Ala.2001)(finding no federal jurisdiction over claim between carrier and shipper for unpaid freight charges).   *See also On Track Transp., Inc. v. Lakeside Warehouse & Trucking Inc*.,  245 F.R.D. 213, 225

---

exhibit 4 at 15.  The court notes both the vast amount of employee time and resources both the plaintiff and defendant must have put forth on resolving such billing issues, and the fact that almost 75% of defendant billing adjustments were apparently "inappropriate" under the contract.

In an April 5, 2006, email discussing the use of systemic blocks, a regional coordinator for UPS was informed by a finance manager for UPS that a particular customer was credited $1,502 due to erroneous charges, an average of $125.00 per week, which also required about 1 hour per week to research and create the adjustment.  The suggestion was made that "A SCC systemic block would eliminate incorrect billing by UPS, provide better service and strengthen our relationship with the customer."  Plaintiff's exhibit 12 (submitted as doc. 116-27).

(E.D.Pa.2007) ("a carrier's action to recover amounts due from a shipper is simply

a contract action.").

In its reply, the defendant states that "the original breach of contract claim

alleged by Barber was not preempted, but [] the court subsequently certified a

class action based on a theory of recovery that is preempted."  Defendant's reply

(doc. 142) at 13.  The defendant continues that

> [t]he original claim did not challenge UPS's right to audit packages or
> seek to impose any limitations on UPS's audit rights other than
> requiring that the billing adjustment reflect the dimensions of the
> package....  Thus, Barber's original breach of contract claim
> challenged the "appropriateness" of billing adjustments based on
> whether the billing adjustments accurately reflected the physical
> characteristics of the audited packages.  This is consistent with the
> parties' contract, which gives UPS the right to bill based on actual
> package characteristics.  Because it was premised on a violation of
> UPS's self-imposed contractual undertaking and did not require the
> application of any state law standards to evaluate UPS's conduct, the
> original claim was within the scope of the *Wolens* exception and was
> not preempted.  It is the present approach to the case that runs afoul
> of FAAAA preemption.

Defendant's reply, at 14.  The plaintiff is still seeking to have adjustments to bills

be based on accurate measurements.  In spite of the defendant's repeated

arguments otherwise, the plaintiff is not challenging the rates charged by the

defendant.  The plaintiff simply seeks to have defendant use accurate machines to

audit package dimensions prior to billing plaintiff for increases in shipping

charges based on defendant's audit measurements exceeding those the plaintiff calculated.[10]

Having considered the foregoing, and being of the opinion the defendant's motion to reconsider is due to be denied;

It is therefore **ORDERED** by the court that said motion be and hereby is **DENIED**.

**DONE** and **ORDERED** this the 17th day of November, 2009.

_Inge Prytz Johnson_

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

---

[10]The class certified by the court in its September 29, 2009, Order was as follows:

> All contracted UPS customers between May 15, 2006, and the present who shipped packages with UPS from one location in the United States to another location in the United States wherein the shipper entered into the UPS system, including but not limited to the iShip and Worldship systems, the height, length and width of the packages which UPS used to determine the dimensional weight, which UPS audited the packages, and based upon those audits, entered new and larger dimensions from those entered by the customer, resulting in a higher charge to the customer.

This clearly defines a class of individuals who are challenging the "appropriateness of billing adjustments based on whether the billing adjustments accurately reflect the physical characteristics of the audited packages." Defendant's reply, at 14. At no point has defendant challenged the actual class definition. Defendant's argument that the plaintiff is really challenging matters other than the appropriateness of billing adjustments is contradicted by the very definition of the class.

29