## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **BARBER AUTO SALES, INC.,**<br>**individually and on behalf of all**<br>**persons similarly situated,** | ) ) ) | |
| | ) | |
| **Plaintiff,** | ) ) | **CIVIL ACTION NO.:**<br>**5:06-CV-04686-IPJ** |
| **vs.** | ) ) | |
| **UNITED PARCEL SERVICE,**<br>**INC.,** | ) ) ) | |
| | ) | |
| **Defendant.** | ) | |

## FINAL JUDGMENT AND ORDER OF FINAL APPROVAL

Before the Court are the Parties'[1] Joint Motion for Final Approval, filed November 30,

2011 ("Motion"), and Plaintiff's Application for Attorney's Fees, Expenses, and Incentive

Awards, filed November 30, 2011 ("Fee Application"). A hearing on the Parties' Joint Motion

for Final Approval of the Settlement was held on December 5, 2011. Plaintiff, Barber Auto

Sales, Inc. ("Barber"), and Defendant, United Parcel Service, Inc ("UPS"), were both represented

by their counsel of record. Daniel Greenberg of Greenberg Legal Services, in association with

the Center for Class Action Fairness LLC, and John Park of Strickland Brockington Lewis LLP,

counsel for Objectors to the Settlement, Noah and Brandy Heaser, also appeared at the hearing.

Having read and considered the filings related to the Settlement, and having heard and

considered the arguments of counsel, the Court hereby **GRANTS** both the Motion and the Fee

Application, and finds as follows:

---

1 All capitalized terms are as defined in the Parties' Amended Settlement Agreement filed

1

## I.  PROCEDURAL POSTURE

Barber filed its class action complaint against UPS on November 15, 2006, and amended that complaint on February 20, 2007. UPS filed a motion for judgment on the pleadings, seeking dismissal of Barber's claims for injunctive and declaratory relief as preempted by the Federal Aviation Administration Authorization Act of 1994, 49 U.S.C. §§ 14501(c)(1) and 41713(b)(4)(a) (hereinafter "FAAAA"). UPS also sought to dismiss claims that arose more than eighteen months before the filing of the Complaint under the FAAAA statute of limitations, and any claim for which Barber or a Class member did not provide notice to UPS within 180 days of a disputed invoice under a contractual notice provision and 49 U.S.C. § 13710(a)(3)(b). On June 5, 2007, the Court granted UPS's motion, dismissing among others, the equitable and time-barred claims. *See* Docket No. 34.

Following class discovery, Barber moved for class certification of its sole remaining claim, breach of contract for money damages. In their briefing on Barber's motion for class certification, the Parties submitted to the Court several deposition transcripts, three expert reports, and numerous other documents related to the allegations in the case. These submissions reflected the enormous amount of class-related discovery that the Parties had conducted. After considering the substantial record and hearing argument from counsel, this Court granted Barber's motion for class certification on September 29, 2009, *see* Docket No. 131, and denied UPS's motion for reconsideration, *see* Docket No. 146.

In February 2010, the Eleventh Circuit granted UPS permission to appeal this Court's class certification order under Federal Rule of Civil Procedure 23(f), *see* Docket No. 147, and

August 23, 2011 unless otherwise specified.

following the briefing, heard oral argument on January 26, 2011. That appeal was pending when the Parties reached this Settlement, and the appeal is stayed while the Court reviews the Settlement. *See Barber Auto Sales, Inc. v. United Parcel Service, Inc.*, No.10-10821-GG (11th Cir. June 8, 2011) (order granting stay).

## II.    **BACKGROUND**

Under the published UPS customer agreement, UPS's rates for shipping packages are based on a number of factors, including the Billable Weight of the shipment. For many shipments, Billable Weight is typically based upon the greater of the package's actual rounded weight or the package's volume as converted to pounds. That amount is calculated by formulas agreed upon by the customer and UPS and varies based upon the type of service and individual customized exceptions. The volume-based measurement is known as the package's "dimensional weight." It reflects the amount of space a package occupies in relation to its actual weight, and, as part of the formula, is calculated by multiplying the package's length by width by height to determine its cubic size.

When shipping with UPS, many contracted customers provide UPS with package information called package level detail, which includes the Billable Weight. UPS uses this information to assess charges for each shipment. For that reason, UPS depends on the customer to submit accurate information so that UPS can invoice the customer the proper amount for each shipment. The UPS Customer Agreement gives UPS the right to audit packages to verify the information the customer submits, including the package's weight or dimensions. UPS utilizes both human auditors and laser dimensioning devices to audit package measurements, and then

3

compares those measurements against the information input by the customer. If UPS determines that a customer has undercharged itself based upon the size of the shipment, UPS may, under the Customer Agreement, appropriately adjust shipping fees by issuing a shipping charge correction.

The amended complaint alleged that UPS breached the "appropriate adjustment" provision of its customer contract by "increas[ing] the dimension sizes" when auditing packages that Barber shipped with UPS, thereby increasing Barber's shipping charges. *See* First Amended Class Action Complaint at 6 (Docket No. 18). Barber sought to pursue breach of contract claims on behalf of itself and all UPS customers in the United States who purchased shipping services from UPS and who were assessed "shipping charge corrections" for such services after the customers' packages were shipped. Barber's central allegation was that UPS overcharged it and other similarly situated customers by erroneously measuring the packages during the audit process. Barber alleged that the devices UPS used to conduct audits were not accurate, resulting in additional charges to Barber and other customers which it claims were not "appropriate" under the Customer Agreement.

UPS denied these allegations and contended that the procedures and devices used during the audit process were accurate and reliable and that any shipping charge corrections imposed as a result of its audits were appropriate under the Customer Agreement.

## III. DISCUSSION

### A. NOTICE

1. To comply with due process and the Federal Rules of Civil Procedure, the notice must provide class members with the information reasonably necessary to make a decision whether to remain a class member, object to the settlement, or opt out. Fed. R. Civ. P. 23(c)(2). The notice,

4

however, need not include "'every material fact' or be 'overly detailed.'" *Faught v. Am. Home Shield Corp.*, No. 10-12496, 2011 U.S. App. LEXIS 22073, at \*10 (11th Cir. Oct. 31, 2011) (quoting *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1104-1105 (5th Cir. 1977)).

2.     The notice in this case was written in plain language and sufficiently described the allegations of the action, the Settlement benefits, and the other Settlement terms. At the time notice was delivered, the amount of a particular Class member's recovery was unknown, and the Class was informed of this fact in the notice. The total amount of the Settlement and the mode of distribution were disclosed in the notice. The notice also properly informed Class members of the amount of attorneys' fees requested by Class Counsel. In addition, the notice contained instructions to Class members regarding how to participate in the Settlement or how to exclude themselves from the Settlement. Class members had ample time to review the Settlement terms and decide whether to participate, object, or opt-out of the Settlement.[2] The Court finds that the content of the notice, previously approved by the Court, provided sufficient information to apprise Class members of the Settlement terms and of their opportunity to opt-out or object to the Settlement.

3.     Federal Rule of Civil Procedure 23(c)(2)(B) requires that notice be directed to class members by the best method "that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Here, the notice was

---

[2] The Settlement Administrator's declaration notes that 81 exclusion requests were received after November 7, the deadline set forth in the notice for requesting exclusion from the Settlement. The Parties have agreed to honor those requests as timely, and the Court includes them in its list of exclusions from the Settlement Class attached hereto.

reasonable and sufficient. It was disseminated directly to Class members via email and First Class U.S. mail using their last known addresses, and published on the Settlement website. Thus, the Class members received individual, direct notice of the Settlement. No objection has been raised as to the method of notice. Accordingly, the Court finds that notice was compliant with the requirements of Rule 23(c)(2)(B) as the best notice practicable under the circumstances.

4.     The Court finds, therefore, that all requirements of notice under Federal Rule of Civil Procedure 23 and due process are met. Additionally, the notice program was carried out as the Court directed and was not only reasonably calculated to apprise Class members of the Settlement, but was also the best notice practicable under the circumstances. The Court also finds that proper and timely notice was provided to the appropriate government officials pursuant to 28 U.S.C. § 1715(b).

### B.     SETTLEMENT CLASS

5.     The conditional certification of the Settlement Class is hereby confirmed and finally approved. The Settlement Class is defined as: all contracted UPS customers between May 15, 2006, and August 29, 2011, who shipped packages with UPS from one location in the United States to another location in the United States wherein the shipper entered into the UPS system, including but not limited to the iShip and Worldship systems, the height, length and width of the packages that UPS used to determine the dimensional weight, which UPS audited the packages and based upon those audits, entered new and larger dimensions from those entered by the customer, resulting in a higher charge to the customer.

6.     The following persons are expressly excluded from the Settlement Class: All judicial

officers in the United States and their families through the third degree of relationship; UPS and any of its officers, directors, and employees; any person or entity who has already settled or otherwise compromised their claims against the defendant; anyone who filed before final judgment any bankruptcy proceeding; Plaintiff's counsel, anyone working at the direction of Plaintiff's counsel, and/or any of their immediate family members; anyone who has pending against the named defendant, on August 29, 2011 through the date of this Order, any individual action wherein the recovery sought is based in whole or in part on the type of claims asserted herein; and all persons who opt out. A list of Class members who opted-out of this Settlement is attached to this Order as Exhibit A.

7.      In certifying the Settlement Class, the Court reaffirms its findings from its earlier Order on class certification dated September 29, 2009, and its order on UPS's motion for reconsideration dated October 14, 2009, and finds that the Rule 23(a) factors of numerosity, commonality, typicality, and adequacy of representation are met. *See Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 624 (3d Cir. 1996) ("class actions may be certified for settlement purposes ... [and] Rule 23(a)'s requirements must be satisfied as if the case were going to be litigated"), *aff'd* 521 U.S. 591 (1997).

8.      The Court is satisfied that the Class, at over 1.5 million members, is sufficiently numerous. "[A] class action is appropriate in the first instance when it is impracticable to join all class members as parties in a single action." NEWBERG ON CLASS ACTIONS § 3:3 (3d ed. 1992).

9.      The commonality requirement of Rule 23(a)(2) "measures the extent to which all members of a putative class have similar claims." *Cooper v. Southern Co.*, 390 F.3d 695, 714

(11th Cir. 2004) (citing *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)). Furthermore, under the commonality requirement, the class action must involve issues that are susceptible to class-wide proof. Here, each Class member entered a Customer Agreement with UPS containing the standard provision that Barber claims was breached by UPS. Barber asserts that the dimensional-weight audit devices were not accurate, resulting in additional charges to Barber which were not "appropriate." The Court believes that resolution of the claims Barber asserted necessarily involve common, class-wide proof concerning the accuracy of the UPS dimensioning devices. Accordingly, the commonality requirement of Rule 23(a) is satisfied.

10.     Typicality requires that a class representative "possess the same interest and suffer the same injury as the class members." *Cooper*, 390 F.3d at 713. The Court finds under the theory of liability advanced by Barber, its interest and injury were the same as the Class, for the reasons detailed in Paragraph 9. Thus, the typicality requirement of Rule 23(a)(3) is met.

11.     The adequate representation inquiry requires the Court to find that plaintiff's counsel are qualified, experienced, and generally able to conduct the proposed litigation, and that the plaintiff's interests are not in conflict with those of the class. *See Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985) (citing *Johnson v. Ga. Highway Express, Inc.*, 417 F.2d 1122, 1125 (5th Cir. 1969)). Barber's attorneys are qualified, experienced, and were able to conduct the litigation. The Court finds that Class Counsel demonstrates an understanding of the issues before the Court as well as the competence and ability to conduct this litigation. The Court also finds that Barber is an adequate Class representative for the reasons stated in the Court's September 29, 2009, order granting class certification and those stated in Paragraphs 9 and 10 of this order.

8

12.	For certification under Rule 23(b)(3), a class action must meet two additional requirements: (1) common questions must "predominate over any questions affecting only individual members" and (2) a class action must be "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997); Fed. R. Civ. P. 23(b)(3). For the reasons set forth in the Court's September 29, 2009, Order, the Court finds that questions of law or fact common to members of the Settlement Class concerning the appropriateness of UPS's shipping charge corrections predominate over questions affecting only individual members. Further, a settlement class need not be "manageable" as a class action trial because no trial will occur. *See Amchem*, 521 U.S. at 619. Accordingly, the Court finds that the requirements of Rule 23(b)(3) are satisfied.

## IV.	FINAL APPROVAL OF SETTLEMENT

13.	This Court may approve a class action settlement after notice and hearing, and upon a finding that the settlement is fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(1)(C).

14.	In the Eleventh Circuit, the factors a court should consider when evaluating a settlement are: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Court finds that each of these factors, as discussed below, supports approval of the Settlement.

### A.	THE LIKELIHOOD OF SUCCESS AT TRIAL

15.	The Court finds that the first factor, likelihood of success at trial, weighs in favor of

9

approval. While Barber submitted evidence to support its claims, UPS also had several potentially meritorious defenses to the Class claims that could have prevented the Class from obtaining any recovery in the case whatsoever. Barber alleged in its complaint that UPS breached each Class member's shipping contract by making inappropriate billing adjustments during the audit process. UPS denied that allegation, defended the accuracy of its measurements, and contended that its adjustments were appropriate and submitted evidence to support its position. At this stage in the proceedings, it is possible that a jury could have found that UPS did not breach the Customer Agreement.

16. Further, the Settlement was reached during the time when UPS was challenging this Court's decision to certify a class on multiple grounds. A reversal of class certification would mean that Barber could only act on its own behalf to pursue its individual claims against UPS; alternatively, the Court of Appeals might have: (1) severely reduced the size of the class to those who gave actual notice as required by their UPS shipping contract, or (2) circumscribed the remedy that Barber sought under the limitations established under the FAAAA preemption doctrine. If the certification order was reversed, the rest of the Class also would have faced similar substantive challenges and would have had to pursue their own claims, if any, on an individual basis to recover from UPS. It is unknown how a jury would have responded to such claims presented by individual Class members, but it is possible that the Class members would have received nothing. Thus this factor weighs in favor of approval.

**B.** **THE RANGE OF POSSIBLE RECOVERY AND THE POINT ON OR BELOW THE RANGE OF POSSIBLE RECOVERY AT WHICH A SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE**

10

17.    Courts in the Eleventh Circuit have previously found that evaluating these factors

together is appropriate. *See Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1326 (S.D.

Fla. 2007) (finding that the *Bennett* factors of "range of possible recovery and the point on or

below the range at which a settlement is fair, adequate and reasonable" are "generally analyzed

together").

18.    Given that the Class may not have recovered anything had UPS prevailed on its Eleventh

Circuit appeal or at trial, the Court finds that the $12 million total monetary recovery, $4 million

in attorneys' fees, and costs of settlement administration valued at nearly $500,000 are a

substantial recovery for the Class. Barber submitted evidence showing that a $70-$90 million

recovery was possible but conceded that this was an estimate and that no recovery was also a

possibility. While Barber maintained otherwise, UPS vigorously disputed that the Class was

entitled to any recovery and adduced evidence that there were no systemic issues with the

accuracy of its state-of-the-art dimensioning technology or the shipping charge corrections

resulting from audits using that technology . In light of this uncertainty, Barber and its counsel

have chosen to accept this Settlement. This Court is "entitled to rely upon the judgment of

experienced counsel for the parties" and "should be hesitant to substitute its own judgment for

that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). The Settlement value

of $16.5 million plus invaluable injunctive relief easily surpasses the point on or below the range

of possible recovery at which a settlement is fair, adequate and reasonable, particularly because

the lower bound of the Class recovery is zero. *See Bennett*, 737 F.2d at 987 ("a just result is

often no more than an arbitrary point between competing notions of reasonableness") (internal

citations omitted). This factor weighs in favor of approval.

## C. THE COMPLEXITY, EXPENSE AND DURATION OF LITIGATION

19.     Having presided over the case for five years, this Court knows well the complexity,

expense, and duration of this litigation and finds that this factor weighs in favor of approval.

This action has been litigated vigorously by the Parties, involved complex legal and fact issues

and required extensive discovery. As noted above, UPS had several potentially meritorious

arguments that could be accepted by a jury. Each of those defenses could have foreclosed

Barber's claims, and to prevail at trial, Barber's counsel would have been required to invest even

more time and resources in the case to address UPS's defenses. Barber submitted evidence that

Class Counsel has spent 5,888.886 hours in this case, for a lodestar fee amount of $2,788,803.70,

and incurred additional expenses of $104,631.71. Summary judgment, a trial, and possible

further appeals would have only increased the costs and time expended by Class Counsel, who

would have been forced to invest even more resources into a difficult case and trial on the merits

with no guaranteed recovery. Weighing the certainty of the Settlement benefits against the costs,

risks, and time involved in further litigation strongly favors the Settlement.

## D. THE SUBSTANCE AND AMOUNT OF OPPOSITION TO THE SETTLEMENT

20.     The Court notes that the opposition to the Settlement has been minimal, which weighs in

favor of approval. *See Ass'n For Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 467

(S.D. Fla. 2002) ("a small number of objectors from a plaintiff class of many thousands is strong

evidence of a settlement's fairness and reasonableness"). Only one filed objection to the

Settlement was received from over 1.5 million Class members. The Court notes that no

governmental entities have sought to participate in the Settlement or objected to it, although

those entities were properly provided notice of the Settlement as required by the Class Action Fairness Act. A list of the 317 Class members who opted out of the Settlement is attached to this Order as Exhibit A.3

21. Having read the Objection of Brandy and Noah Heaser and having heard the argument of Objector's counsel at the Final Approval Hearing, for the reasons listed in Section V below, the Court finds that the Objection of Brandy and Noah Heaser is without merit. No other objections were received, and this factor weighs in favor of approval.

**E. THE STAGE OF PROCEEDINGS AT WHICH THE SETTLEMENT WAS ACHIEVED**

22. As discussed above, this case was litigated for nearly five years, including extensive class discovery, heavy motion and procedural practice, and two interlocutory appeals to the Eleventh Circuit. Its procedural posture is ripe for settlement, as the Parties have had more than sufficient time and discovery to fully evaluate the strength of their respective positions, and have chosen this negotiated resolution rather than further litigation. Thus, the Court finds that this factor weighs in favor of approval.

**V. THE HEASER OBJECTION IS OVERRULED**

23. The Heasers make three primary objections to the Settlement. First, they allege self-dealing because the Dimensional-Weight Compensation Fund and injunctive relief are supposedly "illusory" and the Settlement shows the "warning signs" of the Ninth Circuit's recent decision in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011). Second, they allege that purported intra-class conflicts make the Settlement inappropriate. Third,

---

3 While only 295 Class members opted out of the Settlement as of the November 7, 2011 deadline, the Parties have agreed to honor additional Class member requests to opt out through November 30, 2011.

they argue that notice was insufficient. The Court rejects each of these arguments for the reasons discussed below.

### A. THE HEASERS' OBJECTION THAT THE SETTLEMENT IS SELF-DEALING IS OVERRULED

24. The Heasers argue that the Settlement is self-dealing for three reasons: (1) the Dimensional-Weight Compensation Fund is illusory; (2) the injunctive relief is illusory; and (3) the Settlement shows the "warning signs" presented in the Ninth Circuit's recent decision *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011).

#### 1. The Dimensional-Weight Compensation Fund

25. Contrary to the Heasers' Objection, the Dimensional-Weight Compensation Fund ("Dim-Weight Fund") benefits Class members. The Objectors argue that because Class members are former customers and the Dim-Weight Fund is for future customers, the Fund is not a Class benefit. The Court finds this argument unpersuasive and based on a misinterpretation of the Settlement structure.[4] Simply because UPS customers were members of the Settlement Class does not exclude them from making claims under the Dim-Weight Fund. Class members are eligible for benefits from both the Claims Fund and the Dim-Weight Fund. Indeed, according to sworn declarations of UPS submitted with the Motion for Final Approval, the overwhelming majority of Class members (89%) remain UPS accountholders and are thus able to take advantage of the Dim-Weight Fund. Therefore, the Dim-Weight Fund is a benefit to the majority

---

4 In their filed objection, the Heasers argued that the Settlement was inadequate because Class Counsel sought a fee of $4 million, including expenses, when the Settlement only provided a $2 million benefit to the Class. Objectors appeared to abandon this argument at the Fairness Hearing and instead argued that the Settlement should have been one fund instead of two. The Court also finds this new argument to be without merit. The Class will benefit from both funds

of the Class that has already chosen to continue to ship with UPS. Moreover, there is nothing that precludes the remaining Class members from availing themselves of the Dim-Weight Fund if they receive a shipping charge correction in the future. The ability of other customers to access the Dim-Weight Fund does not negate the overall value of the fund or its benefit to Class members, nor does it suggest that the Settlement in itself is unfair.

26.     The Heasers further object that the Dim-Weight Fund is a "coupon" settlement. The Court finds this argument unpersuasive. Unlike a typical "coupon" settlement, Class members are not being provided a discount off future products and services as an incentive to continue to do business with UPS. Class members will not ship packages with UPS with the hope of getting a dimensional-weight shipping charge correction so that they can draw on the benefit of the Dim-Weight Fund. The Dim-Weight Fund exists to compensate Class members and customers if they incur improper shipping charge corrections based on dimensional weight. Declarations from UPS indicate that the majority of the Class members are already in a position to take advantage of the Dim-Weight Fund. An account credit for customers currently using the service is a cash equivalent to the majority of Class members. Rather than being an incentive to do business again, the Dim-Weight Fund is a future benefit available should Class members believe they have suffered an injury. Notably, Barber continues to ship packages with UPS and is eligible to take advantage of the Dim-Weight Fund benefit.

27.     Lastly, the Objectors challenge the structure of the Dim-Weight Fund as a separate fund rather than combined with the Claims Made Fund. The Court finds that this structure is appropriate given the Parties' fundamental disagreement as to whether UPS's audit process is

and the Parties' allocation of the amounts in the two funds was fair, reasonable, and adequate.

proper. Regardless of that dispute, the Court recognizes that disputes regarding the process are likely to happen in the future. Because of UPS's interest in retaining Class members as customers, the prospective nature of the Dim-Weight Fund is appropriate. The Court further finds that the Objectors have not raised any credible objection as to the sufficiency of the amount of the funds, admitting that the Parties were "entitled to settle this case for $6 million (or indeed any reasonable amount)."

### 2. The Injunctive Relief

28. The Heasers argued in their brief that the injunctive relief provided by the Settlement is illusory and will not benefit the Class. Injunctive relief is, by its very nature, prospective in nature. Yet, the Heasers overlook the fact that some 89% of Class members continue to ship using UPS. Thus, the enhanced disclosure and policy revisions by UPS will directly affect most of the Class, as well as all of UPS's customers. The mere fact that other UPS customers will also benefit from the injunctive relief does not reduce the benefit provided to the Class.

29. Further, at the Fairness Hearing, counsel for the Objectors argued that the Settlement allows UPS to use the same audit process at the center of this breach of contract claim. That is not the case as the Parties have submitted evidence of the improvements made to the UPS Customer Agreement related to audits. Moreover, the Court finds that the negotiated relief provided for in the Settlement is an appropriate means of resolving this dispute.

### 3. The Settlement Does Not Show Any of the "warning signs" Presented in the Ninth Circuit's Recent *Bluetooth* Decision

30. The Heasers argue that this Settlement shows three alleged "warning signs" discussed in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011): (1)

16

disproportionate benefit to Class Counsel; (2) a "clear-sailing" provision; and (3) a "kicker" clause. The Court finds these arguments unpersuasive for the reasons discussed below.

### 3.1. Benefit to Class Counsel

31.    The most obvious reason why *Bluetooth* is distinguishable from this Settlement is because the *Bluetooth* class members did not receive any monetary recovery from their settlement. Instead, the *Bluetooth* settlement provided for a cy pres payment of $100,000 with a fee award of $800,000. *Bluetooth*, 654 F.3d at 938. Noting that "collusion" may be more likely in cases in which a settlement is reached pre-class certification, the Ninth Circuit expressed concern over whether the benefit to class counsel was proportionate to the class recovery. *Id.* at 946. That concern does not apply here, however, because the class members' monetary recovery is substantial and the Settlement was reached after this Court granted the contested motion for class certification. Moreover, the parties in *Bluetooth* failed to present evidence that the fee was reached only after settlement benefits for the class were obtained. *Id.* In contrast, the fee award here was proposed by a highly-qualified and experienced mediator and agreed upon by both Parties only after settling the Class relief. *See* Decl. of Max ¶¶ 5-6. Thus, the Ninth Circuit's decision in *Bluetooth* is clearly distinguishable from this Settlement and provides no support for the Objectors' claim of "self-dealing."

### 3.2. The "clear-sailing" Provision

32.    The Objectors also challenge the fact that UPS has agreed not to oppose Class Counsel's fee award, but such "clear sailing" provisions are appropriate and have been approved by the Eleventh Circuit. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1293-1300 n.4 (11th

Cir. 1999) (holding that district court did not abuse discretion in approving settlement and awarding attorneys fees with a "clear sailing" provision, and noting that other courts have determined that such agreements are essential to settlement, because "the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged") (internal citations omitted). It is appropriate and reasonable that UPS would agree not to oppose Class Counsel's fee request on the basis that it was a negotiated-for and agreed-upon number by both Class Counsel and UPS's counsel, and based on the proposal of a respected mediator, Mr. Rodney A. Max. There would be little point to agreeing upon a fee award if that agreement is later subject to revocation or objection. This Court declines to read the fee agreement between the Parties as a *prima facie* indication of self-dealing.

33. During the Fairness Hearing, Objectors' counsel argued that the Parties and their respective counsel colluded to betray or neglect the interests of the absent Class members by entering into this Settlement. The Court specifically finds that counsel for the Parties have conducted themselves with the utmost ethics and professionalism in litigating and negotiating a resolution of this case, and that the Parties did not collude with each other to achieve this fair and reasonable Settlement. This finding is supported by the voluminous pleadings and briefs filed in this action, the duration and timing of the Settlement negotiations, the declaration of the mediator, Mr. Max, and the Court's own observations of the Parties and their counsel throughout the five-year history of the litigation.

### 3.3. The "kicker" Clause

34. Finally, the Heasers object to the "kicker" provision, which purportedly reverts

unawarded Class Counsel fees to UPS, and not to the Class members. This objection ignores the difference between "common-fund" settlements and settlements in which a fee agreement is reached separately and independently of the class recovery, like this case. In this Settlement, the Class benefit -- $12 million in total, plus injunctive relief and Settlement administration costs -- will not be reduced or otherwise impacted should Class Counsel not receive the entire $4 million in fees. This Settlement has been structured such that the Class relief is wholly independent of fees for Class Counsel. Lower fees awarded to Class Counsel would not increase the Class benefit, nor would higher fees for Class Counsel decrease the Class benefit. Indeed, structuring the Settlement in this way avoided any conflict of interest between the Class and Class Counsel. Thus, the agreement of UPS and Barber on fees is not a "kicker" provision, nor is it evidence of self-dealing. The Court finds that the separate negotiation of attorneys' fees after the negotiation of the Class benefit ensured that the interests of the Class were not overlooked or shortchanged in favor of Class Counsel's fee award.

### B. THE HEASERS' OBJECTION REGARDING INTRA-CLASS CONFLICTS IS OVERRULED

35. The Heasers object that there are conflicts within the Class that make this Settlement inappropriate. The Court disagrees. There are no conflicts among the Class members. As explained above, the Class can participate in the Dim-Weight Fund and all Class members can obtain relief from the Claims Made Fund. The fact that Class members will receive varying amounts is of no consequence to the fairness of the Settlement. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1146 (8th Cir. 1999) ("almost every settlement will involve different awards for various class members"). Each Class member will receive a dollar-for-dollar credit from the

19

Dim-Weight Fund on a first-come, first-served basis for the full amount of any claimed overcharge, and either a full or a pro-rata refund from the Claims Made Fund. The Court finds that this Settlement treats all Class members the same and therefore does not create any conflicts that would require subclasses.

### C. THE HEASERS' OBJECTION REGARDING NOTICE IS OVERRULED

36.     As discussed in Section III(A) above, the notice program was the best practicable under the circumstances. The notice program was reasonably calculated to, and in fact did, apprise the Settlement Class of the pendency of the Action, Class certification, the terms of the Settlement, Class Counsel's fee application, and their rights to opt-out of the Settlement Class or object to the Settlement and/or to Class Counsel's fee application. No other information was required. The information in the notice was sufficient for Class members to decide whether to receive the Settlement benefits in whatever amount, or to opt-out if they were not satisfied with the potential recovery. After receiving the notice, 317 Class members opted out of the Settlement. The Objection concerning the notice is overruled.

### D. THE HEASERS' OBJECTION REGARDING ATTORNEYS' FEES IS OVERRULED

37.     The Heasers also object to the proposed attorneys' fee award. They have not challenged the $10,000 incentive award to Barber, the named plaintiff. Their objection states that: (1) the proposed fee is disproportionate to the proposed settlement; and (2) the proposed fee seems to suggest collusion because it contains a "clear sailing" provision and because any fees not awarded by this court revert to UPS. All objections to the requested fee are without merit and are hereby overruled.

38.     The Heasers' general objection that the fees are "excessive" or "exorbitant" has no merit.

20

It is the burden of the party opposing the request to submit specific objections to the fee. *Gates*

*v. Deukmejian*, 987 F.2d 1392, 1404 (9th Cir. 1992). Conclusory and unsubstantiated objections

are not sufficient to warrant a reduction in fees. *See Lucas v. White*, 63 F. Supp. 2d 1046, 1057-

58 (N.D. Cal. 1999). It is unlikely any of the objectors were aware, at the time of their objection,

of the enormous amount of work performed by Class Counsel in this matter.

39.     Moreover, the objectors here completely misinterpret the terms of the Settlement when

they mistakenly argue that no Class member, by definition, can participate in the Dim-Weight

Fund. This misplaced argument forms the basis of their entire objection, because they believe

the fee is excessive only because it is twice the amount of the $2 million Claims Made Fund.

However, the fees and expenses sought by Class Counsel represent less than 25% of the

minimum potential value of the Settlement's $16.5 million value, and are compensation for

approximately 5,888 hours of work and over $104,000 in expenses incurred over five years of

litigation.

## VI.     APPROVAL OF FEE REQUEST AND REIMBURSMENT OF CLASS COUNSEL EXPENSES

40.     Also before the Court is Class Counsel's Motion seeking an award of fees and expenses

in the amount of $4 million and an incentive award to the Barber of $10,000, which will be

discussed in Section VII below. Federal Rule of Civil Procedure 23(h) provides in pertinent part

that "[i]n an action certified as a class action, the court may award reasonable attorney's fees and

nontaxable costs authorized by law or by agreement of the parties." Accordingly, the Court

makes the following findings and conclusions regarding the requested fees and expenses and

incentive award.

## A. THE FEE WAS ONLY ARRIVED AT AFTER CONTENTIOUS NEGOTIATIONS AND A MEDIATOR'S PROPOSAL

41.     It was not until after the Parties had negotiated the substance of the Settlement, the relief

distributable for the Class, and administrative expenses did they begin negotiations on the issue

of attorneys' fees and expenses. According to the declaration of the mediator, the Parties

thereafter reached an impasse on the attorney's fees issue, and negotiations broke off. At that

point, as a final attempt to resolve the case, the mediator, as noted above, submitted to the Parties

a final mediator's proposal. The amount proposed by Mr. Max was $4 million, including costs

and expenses, with UPS paying such amount if approved by the Court.

## B. THE SETTLEMENT CREATES A COMMON FUND OF $16.5 MILLION

42.     The law in this Circuit is that when a common fund is created for the benefit of a class,

the attorneys' fee is to be calculated as a percentage of that fund. *Camden I Condo Ass'n, Inc. v.*

*Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991). The Court finds that the common fund in this case

includes: (1) the $2 million Claims Made Fund; (2) the $10 million Dim-Weight Fund; (3) the $4

million in attorneys' fees and reimbursable expenses; and (4) the approximately $500,000 in

Settlement administration costs.

43.     The $2 million Claims Made Fund is part of the common fund for the benefit of the

Class. It provides a direct cash payment (or credit if requested) to Class members making claims.

Similarly, the Dim-Weight Fund provides prospective cash relief for Class members who

continue to ship with UPS. "[W]hen determining the total value of a class action settlement for

purposes of calculating the attorneys' fee award, courts usually not only consider the

compensatory relief, but also the economic value of any prospective injunctive relief obtained for

22

the class." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1342-43 (S.D. Fla. 2007); *see also Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003). Thus, the value of this fund is readily calculable, and a direct monetary benefit to the Class.

44.     Class Counsel seeks reimbursement of $104,631.71 in litigation expenses as part of their request. Also, the costs of $500,000 to administer the Settlement are included in the common fund. Cash used to pay attorneys' fees and claim administration is part of the value of the common fund. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 354 (N.D. Ga. 1993); *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 336 (E.D. Pa. 2007). The Court finds that these costs are a benefit to the Class.

45.     A litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole. *See Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980)). This includes all cash used to pay attorneys' fees and the expenses of claims administration. *See In re Domestic Air Transp.*, 148 F.R.D. at 354.

## C.     THE FEE IS REASONABLE UNDER ELEVENTH CIRCUIT STANDARDS

46.     It is the Eleventh Circuit standard that "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774. Because this Settlement results in common benefits to the Class, and includes a negotiated fee award to be paid by UPS in addition to the Class relief, the Court finds the proper method for evaluating Barber's fee request in this case is through a percentage-of-the-benefit analysis with a lodestar cross-check. *Id.*; *see also Faught v. Am. Home Shield Corp.*, No.

10-12496, 2011 U.S. App. Lexis 22073 (11th Cir. Oct. 31, 2011).

### 1. The Percentage of the Recovery Method is Appropriate When Common Benefits are Created.

47.     Barber has created a pool of money to be divided among the Class. Under the

percentage-of-the-common fund approach, the district court awards a percentage of the fund

created by the attorneys' efforts as their reasonable attorneys' fee. *Blum v. Stenson*, 465 U.S.

886, 900 n.16 (1984). A 25% fee is typically upheld based on such factors as: (1) the results

obtained for the class, (2) the risk for its counsel, (3) whether any individual non-monetary

benefits were obtained, (4) whether the fee is within the range typically associated with cases of

this kind, and (5) the burden on the class counsel of prosecuting the case. The trend in this

Circuit is consistent with decisions nationwide awarding fees in common fund cases based on a

percentage of the value of the total recovery. *See* David F. Herr, Manual for Complex

Litigation § 14.121 (4th ed. 2006) ("[t]he vast majority of courts of appeals now permit or

direct district courts to use the percentage-fee method in common-fund cases.").

### 2. Percentage-of-Fund/Benefit Method is Also Appropriate Where the Defendant Agrees to Pay Fees in Addition to Class Compensation.

48.     Even if attorneys' fees to be paid by the defendant are negotiated separate and apart from

the settlement fund, the percentage-of-the-benefit method may still be used to calculate the fees.

*Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996). In *Johnston*, as here, the

fees did not strictly come from a "common fund" but the Eighth Circuit explained:

> [I]n essence the entire settlement amount comes from the same
> source. The award to the class and the agreement on attorney fees
> represent a package deal. Even if the fees are paid directly to the
> attorneys, those fees are still best viewed as an aspect of the class'
> recovery. Accordingly, the direct payment of attorney fees by

> defendants should not be a barrier to the use of the percentage of
> the benefit analysis....

83 F.3d at 246 (internal citations omitted). *See also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 335-36 (3d Cir. 1998) (upholding the district court's determination that, although no cash fund was created and attorneys' fees were paid directly to counsel, "the settlement was most closely aligned to the common fund paradigm and that a percentage-of-recovery calculation was the appropriate measure of the attorneys' fee award").

### D. THE RESULTS OBTAINED JUSTIFY THE REQUESTED FEE

49. The results obtained by Class Counsel demonstrate that the requested attorneys' fees are fair, reasonable and appropriate. Class Counsel has obtained a $12 million recovery for Class members. The Settlement also provides for certain remedial relief that should greatly reduce future adjustments to Class members' shipped packages. In addition, to the extent future errors occur, the Settlement provides the $10 million Dim-Weight Fund to compensate Class members for future claims. Moreover, the Settlement release is limited to claims based on a breach of the "appropriate adjustment" provision of the Customer Agreement prior to August 29, 2011.

50. The ample size of the Settlement, the remedial relief obtained, and the complexity of the case in which it was obtained strongly support the requested fee and expense amount. There is also evidence that the potential high-end recovery on this case was between $70 million and $90 million. Using the lower end of this amount, and not considering the added expenses that would necessarily be incurred if the case were tried, the Class would receive approximately $52.5 million in relief after a deduction of a 25% fee award from the recovery. Thus, the $12 million

achieved in this Settlement could be as much as 24% of what the Class could recover at trial. This amount is clearly adequate and fair to resolve this matter.

51.     The Settlement was obtained in the face of significant risk. Unlike the situation in many consumer class actions, Class Counsel did not have the benefit of a body of cases or administrative rulings interpreting and implementing this contract. More importantly, the Class faced substantial hurdles before the Eleventh Circuit in affirming class certification and establishing liability. Even if Barber was successful in this action, the risks of litigation would have continued through appeals. Post-trial motions and appeals of any substantial verdict were a virtual certainty. *See In re Art Materials Antitrust Litig.,* 100 F.R.D. 367, 372 (N.D. Ohio 1983) (recognizing difficulties of proof and likelihood of costly trial on the merits).

52.     This case was undertaken by Class Counsel on a contingent fee basis against worthy and well-financed opponents. Class Counsel expended considerable time and resources with no assurance that they would receive any compensation. UPS consistently took the position that Barber could not establish liability or maintain this matter as a class action. UPS is one of the largest shipping companies in the world with extremely skilled counsel to aid in its defense. Class Counsel's work was neither easy nor assured of success.

53.     Nationwide consumer class cases are complex and difficult to litigate. Here, the case was protracted and UPS raised substantial issues concerning whether the alleged practices breached the terms of its contract, and whether the case could be maintained on a nationwide class basis. There was no guarantee that Barber would ultimately prevail on any of those issues.

54. The fee is reasonable when compared to customary private contingency fee agreements. In such cases, customary percentage fee agreements usually range between 30% and 40% of the recovery. *See Blum*, 465 U.S. at 903, 904 n.* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."); *In re M.D.C. Holdings Sec. Litig.,* No. CV89-0090, 1990 WL 454747, at *7 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery.").[5] Thus, customary contingent fee agreements obtained in the private marketplace, which range between 30% to 40% of the recovery, also validate the smaller percentage requested in this case.

55. The mediator filed a declaration addressing the timing of the fee negotiations. Class Counsel and UPS did not negotiate or discuss attorneys' fees until after the Parties agreed on the Class Settlement. Max Decl. ¶ 5. This process helped to safeguard the interests of the Class. *See In re Prudential Ins. Co.,* 962 F. Supp. 572, 577 (D. N.J. 1997), *vacated*, 148 F.3d 283 (3d Cir. 1998). The Parties could not agree on fees and expenses, and the mediator submitted a final mediator's proposal. The Parties ultimately accepted the proposal and agreed that UPS would not oppose an award of fees and expenses of up to $4 million. As Mr. Max's declaration states, he recommends the Settlement to the Court as being fair, reasonable and adequate. Max Decl. ¶¶ 9-10. Mr. Max's role included evaluating the benefits of the Settlement, and thus he was in a position to ascertain whether $4 million was an appropriate attorneys' fee.

### E. CONSUMER CLASS ACTIONS ARE UNPREDICTABLE AND RECOVERY WAS FAR FROM ASSURED

---

[5]Although evidence of such private agreements is not determinative, it can be "probative of the fee award's reasonableness." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).

56. Class Counsel undertook this highly complex and risky litigation on a wholly contingent basis with no guarantee that their expenses would ever be recovered or that their fees would ever be paid. They expended millions of dollars in professional time and expenses. If Barber was entirely unsuccessful, Class Counsel would have received no compensation for any of their efforts and no reimbursement of the substantial expenses they incurred in prosecuting these claims on behalf of the Class.

57. Despite the most vigorous and competent efforts of class counsel, success on the merits is never guaranteed. When success is achieved, a substantial award is warranted. As the court in *McKittrick v. Gardner,* 378 F.2d 872 (4th Cir. 1967), recognized:

> The effective lawyer will not win all of his cases, and any determination of the reasonableness of his fees in those cases in which his client prevails must take account of the lawyer's risk of receiving nothing for his services. Charges on the basis of a minimal hourly rate are surely inappropriate for a lawyer who has performed creditably when payment of any fee is so uncertain.

*Id.* at 875. *See also Meshel v. Nutri/System, Inc.,* 102 F.R.D. 135, 140 (E.D. Pa. 1984) ("The contingent nature of the fee must be taken into consideration by us in fixing the final fee.").

58. Class Counsel faced the significant risk that Barber's claims would suffer dismissal on the merits or reversal upon appeal. Class Counsel here assumed all litigation risks. Class Counsel also faced the financial resources and legal talent of one of the country's largest corporations and its defense firms. Counsel's risks were increased because of the enormous resources available to the opposing party.

F. THE RESULT UNDER A PERCENTAGE-OF-THE-FUND APPROACH IS CONFIRMED BY A LODESTAR CROSS-CHECK

1. A Lodestar Plus the Multiplier Sought is Appropriate.

59.     The propriety of the requested fee under a percentage-of-the-fund approach is further confirmed by a cross-check of Class Counsel's lodestar. Declarations submitted by Class Counsel collectively establish: (1) the number of hours expended; (2) the attorneys involved and their experience levels; (3) the applicable market rate for fees; (4) applicable lodestar; and (5) the reasonable and necessary expenses incurred. Under the lodestar approach, attorneys' fees are calculated "according to prevailing market rates" in the relevant legal community. *Blum*, 465 U.S. at 894.

60.     In addition to the declarations of Class Counsel setting forth the work expended, the time it took, and their hourly rates, Class Counsel submitted the Declaration of Joseph R. Whatley, Jr. confirming the reasonableness of the hourly rates and the time expended. Whatley Decl., Ex. G. to Class Counsel's Motion For Award of Fees and Expenses. Mr. Whatley is an accomplished class litigator who is familiar with the prevailing hourly rates for this type of work in Birmingham, Alabama, and testified that the hourly rates comprising the lodestar amount are reasonable. Whatley Decl. ¶ 5. Mr. Whatley reviewed the expenses and the time expended, concluded that such were reasonable and necessary under the circumstances, and stated in his professional opinion that the $4 million request for fees and expenses is reasonable under the law of the Eleventh Circuit and should be approved. Whatley Decl. ¶ 5.

61.     The aggregate lodestar established by Class Counsel is $2,788,803.70, and the aggregate expense total is $104,631.71. The requested fee constitutes a 1.45 enhancement of the lodestar amount, a figure below the acceptable range of lodestar plus multipliers awarded in complex cases of this type. It is not uncommon for an enhancement multiplier to be used in the calculation of the fee. *See Davis v. Locke*, 936 F.2d 1208, 1215 (11th Cir. 1991) (affirmed 1.6

enhancement multiplier "to compensate for the risk associated with a contingency fee"); *Camden I*, 946 F.2d at 772 (adjustment of lodestar for contingency for final lodestar determination). In a common fund case, a lodestar and multiplier is used as a "check" against the fee sought. "[A] reasonable attorney's fee is calculated by determining the lodestar amount -- i.e., the number of hours counsel reasonably expended multiplied by a reasonable rate for similar work -- and then multiplying the lodestar amount by such a subjective 'multiplier' to compensate for the risk of litigation." *Been v. O.K. Indus.*, No. 02-285, 2011 U.S. Dist. LEXIS 115151, at *29 (E.D. Okla. Aug. 16, 2011). "A multiplier of four or less is commonly accepted as reasonable." *Id.* (citing *Roe v. Cheyenne Mtn. Conf. Resort, Inc.*, 124 F.3d 1221, 1233 n.8 (10th Cir. 1997)). The cases are numerous approving multipliers in this range. *See e.g., Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 122-23 (E.D. Pa. 2005) (multipliers from one to four are common, awards 1.5 multiplier); *Florin v. Nationsbank of Ga., N.A.*, 60 F.3d 1245, 1247 (7th Cir. 1995) (multiplier adjusted upward to 1.53 after trial court only used a 1.01 multiplier). Any sort of reasonable multiplier to account for the riskiness of this action puts the lodestar "check" above the fee requested in this case. *See Vizcaino*, 290 F.3d at 1050-51 (upholding a 28% fee award that constituted a 3.65 multiple of lodestar); *Keith v. Volpe*, 501 F. Supp. 403, 414 (C.D. Cal. 1980) (awarding 3.5 multiplier); *Conroy v. 3M Corp.*, C-00-2810 CW (N.D. Cal. 2007) (awarding 2.1 multiplier in non-cash settlement).

62.    The lodestar figure may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment. Factors that may be relevant to a lodestar/multiplier analysis, including: (1) the time and labor required; (2) the novelty and

30

difficulty of the questions involved; (3) the requisite legal skill necessary; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount at controversy and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client and; (12) awards in similar cases. *Camden I*, 946 F.2d at 772.

63.     The modest multiplier of 1.45 requested in this case is warranted. This case was litigated over a five-year period. Two rulings were appealed, and fully briefed and argued, to the Eleventh Circuit Court of Appeals. Hundreds of thousands of documents were produced and reviewed, and numerous expert witnesses were deposed by Class Counsel. Class Counsel also hired its own expert. This representation consumed a significant portion of Class Counsel's practice during its pendency, and required great skill in an area of the law where only the narrowest of claims escaped preemption under the FAAAA.

64.     All of this work was done by Class Counsel on an at-risk basis, with no guarantee of success. For this difficult, risky work, Class Counsel requests a fee that is not only customary as a percentage of the funds under *Camden I*, but it is customary under a lodestar and multiplier analysis. The 1.45 multiplier is on the lower end of multipliers normally sought for contingent, class action cases. *See e.g., Davis*, 936 F.2d 1208; *Been*, 2011 U.S. Dist. LEXIS 115151; *Roe*, 124 F.3d 1221; *Vizcaino*, 290 F.3d 1043. This is particularly true where the evidence shows that $12 million in relief is approximately 25% of the recovery which could have been distributable to the Class were the case tried and won, an outcome far from certain. This is a case in which recoveries on an individual basis would be small and economically infeasible to undertake.

65. As the Eleventh Circuit noted in *Davis*, 936 F.2d at 1215, a risk multiplier to the base lodestar is appropriate to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See Camden I*, 946 F.2d at 772. Class Counsel, however, undertook the representation in the only way it could, through a risk-intensive class action, and produced a significant result for the Class, justifying the 1.45 multiplier.

### 2. The Fee Requested Is Appropriate Under CAFA.

66. The jurisdiction of this Court was invoked under the Class Action Fairness Act. If this were a "coupon" settlement, the fee would be subject to 28 U.S.C. § 1712. However, as discussed above, the Court finds that this Settlement is not a coupon settlement because it provides no independent incentive to use UPS in exchange for a discount on a service. The Dim-Weight Fund provides a credit to remedy charges that the Class seeks to avoid. That is not a coupon. Also, the Dim-Weight Fund provides meaningful compensation to the Class, distinguishing it from a "coupon" settlement. *See True v. Am. Honda Motor Corp.*, 749 F. Supp. 2d 1052, 1062 (C.D. Cal. 2010).

67. The above-referenced analysis concerning the statutorily undefined term "coupon" is largely an academic exercise. Even if the Dim-Weight Fund were termed a "coupon", the fee is still justified under 28 U.S.C. § 1712. First, the statute states "[n]othing in this subsection shall be construed to prohibit application of a lodestar with a multiplier method of determining attorney's fees." 28 U.S.C. § 1712. The lodestar multiplier analysis is stated above, and the lodestar plus 1.45 multiplier is well earned under the *Camden I* and *Davis* analysis. That analysis applies even if this Settlement is subject to CAFA guidelines for "coupon" settlements.

### 3.    The Expenses Are Reasonable And Should Be Reimbursed.

68.    The $4 million request is inclusive of Class Counsel's unreimbursed expenses

$104,631.71, which the Court finds were reasonable and necessary to successfully prosecute this

action.  Under the common fund doctrine, Class Counsel are entitled to reimbursement of all

reasonable out-of-pocket expenses incurred in prosecution of the claims and in obtaining a

settlement. *See Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994); *Vincent v. Hughes Air W.,*

*Inc.,* 557 F.2d 759, 769 (9th Cir. 1977).  The declarations submitted by Class Counsel and the

detailed list of expenses incurred establishes all of the expenses for which reimbursement is

sought.  The Court has reviewed the detailed submission of costs and expenses and finds these

expenditures to have been reasonable and necessary.

69.    In conclusion, the requested fee is reasonable in light of the factual record, percentage of

recovery, overall lodestar, the mediator's recommendation, and the procedural protections

afforded to the Class under the structured Settlement and arms-length negotiation procedure

employed in this case.  Accordingly, the Court awards to Class Counsel fees and expenses of $4

million, to be paid in accordance with the Settlement terms.

## VII.    BARBER AUTO SALES IS ENTITLED TO AN INCENTIVE AWARD AS A CLASS REPRESENTATIVE.

70.    The Settlement provides for a $10,000 incentive award to be paid to Barber Auto Sales,

Inc. to compensate it for the time and effort expended in its role as the Class representative in

this case.  This is to be paid in addition to the other obligations of the Settlement.  "Courts

routinely approve incentive awards to compensate named plaintiffs for the services they provided

and the risks they incurred during the course of the class action litigation." *Ingram v. Coca-Cola,*

*Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001).

71.     There have been no objections to the incentive award to be paid to Barber Auto Sales,

Inc., nor could any objection stand.  Barber answered written discovery, produced thousands of

documents, was prepared for deposition, and was deposed twice in this case.  Under the law,

Barber is entitled to some compensation for those efforts, and the $10,000 award requested is fair

and reasonable.  Accordingly, the Court awards to Barber Auto Sales, Inc. an incentive award of

$10,000 to be paid in accordance with the Settlement terms.

## VIII.  RELEASE OF CLAIMS

72.     All members of the Settlement Class are bound by the terms of the Settlement

Agreement.  As of the date of this Order, all members of the Settlement Class are barred and

enjoined from commencing, prosecuting or continuing to prosecute, either directly or indirectly,

in this or any other jurisdiction or forum, any Released Claim.

73.     Neither this Order nor any aspect of the Settlement Agreement is to be construed  or

deemed an admission of liability, culpability, negligence, or wrongdoing on the part of defendant

UPS.  In particular, nothing in this Order or in the Settlement Agreement shall be offered

or construed as an admission of, or evidence of, liability, wrongdoing, impropriety,

responsibility or fault by UPS or its employees and agents.  In addition, nothing in this Order or

the Settlement Agreement shall be offered or construed as an admission or evidence of the

propriety or feasibility of certifying a class in any other action for adversarial, rather than

settlement, purposes.

## IX.    FINAL JUDGMENT

74.     The Clerk is directed to enter a Final Order and Judgment dismissing this action on the

merits with prejudice and without costs or attorney's fees to any party except as provided herein.

The claims dismissed thereby shall encompass all Released Claims.

75.     The dismissal of this case is without prejudice to the rights of the Parties to enforce the terms of the Settlement. Without affecting the finality of this Order or the judgment to be entered thereon, the Court retains jurisdiction over this matter for purposes of resolving any dispute that may arise under the Settlement.

**DONE AND ORDERED** this /2 day of August, 2011.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

CC: all counsel of record